India Wharf Brewing Co., Appellant, *v.* Brooklyn Wharf and Warehouse Company, Respondent.

1. Construction of Conveyance by Warehouse Company of Lots Bounded by a Wharf Fronting on Basin, Reserving Ownership and Control Thereof. *It seems,* that a conveyance by a wharf and warehouse corporation authorized to construct docks, piers, basins, etc., of certain lots bounded by a wharf, in front of which was a navigable basin, artificially constructed and owned by the company, which furnished access from the wharf to the harbor, and which at the time of the conveyance was practically free from piers and all other obstructions as represented on a map filed in the county clerk's office and referred to therein for the purpose of identifying the particular lots sold, their location, situation and boundaries, and which conveyance expressly reserved to the company the ownership and control of both the wharf and the basin with the right to charge surrounding owners of warehouses for the use of the same, does not require the grantor to keep the basin entirely free from piers as it appeared on the map and as it was when the grant was made for all future time, and confers no right upon the grantee to prevent the · subsequent construction or extension of a pier in front of its property without its consent, although its means of access to the basin are to some extent impaired thereby.

2. General Rule as to Lots Exhibited on Map and Bounded by Street not Applicable. *It seems,* that the representation of the lots on the map as bounded by a street or space does not render applicable in its full scope and meaning the general rule that where lots are sold which are exhibited on a map referred to in the deed and bounded by a street, the

purchaser obtains an easement in the street, because the grantor expressly reserved the ownership, use and control of the designated street with the right to receive the rents and profits.

3. Rights of Grantee.   *It seems,* that the grantee has an easement of access to the water from which he cannot be entirely cut off, but it is subject to reasonable regulation and control by the grantor, and if in its interest and that of the public it undertakes to construct or extend a pier, the effect of which will be to reduce the grantee's means of access to the water, the latter must show that such act is unreasonable and a substantial infringment upon his rights in order to entitle him to an injunction.

4. Appeal — Dismissal of, When Question of Fact Might Be Involved in Decision upon the Merits.   Where, it appears from the record that the question whether the acts of the grantor are reasonable or unreasonable might, under some circumstances, involve an inquiry of fact, depending, among other things, upon the nature of the changes in its business and the necessity for improvement, an appeal from a judgment of the Appellate Division reversing, upon the law and the facts, a judgment of the Special Term, in an action brought to restrain it from constructing or extending a pier in front of the grantee's lots, will be dismissed.

*I. W. Brewing Co.* v. *Bklyn. Wharf & W. Co.,* 59 App. Div. 83, appeal dismissed.

(Argued December 16, 1902; decided January 6, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 13, 1901, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward M. Shepard* and *Henry Yonge* for appellant.   The appeal involves only questions of law.   (*Otten* v. *M. Ry. Co.,* 150 N. Y. 395; *Hirshfield* v. *Fitzgerald,* 157 N. Y. 166; *Griggs* v. *Day,* 158 N. Y. 1.)   The cause is one of equitable cognizance.   (*Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 97; *Milhau* v. *Sharp,* 27 N. Y. 611; *Wheelock* v. *Noonan,* 108 N. Y. 179; *Garvey* v. *L. I. R. R. Co.,* 159 N. Y. 323.) The Appellate Division erred in treating a failure of plaintiff's claim to a fee in India wharf and the basin itself as conclusive

of the case. The judgment at Special Term was none the less right and necessary to protect plaintiff's easement. (*Dorchester* v. *Dorchester*, 121 N. Y. 156; *Knoch* v. *Bermuth*, 145 N. Y. 643; *Penny* v. *R. Ry. Co.*, 7 App. Div. 595.) The grant to Griswold should be held to include a right to the preservation of the basin and its surrounding wharves substantially as shown on the map of 1841, and as described in the grant. (*Lampman* v. *Milks*, 21 N. Y. 505; *Holloway* v. *Southmayd*, 139 N. Y. 390; *Johnson* v. *S. I. Assn.*, 122 N. Y. 330; *Cunningham* v. *Fitzgerald*, 138 N. Y. 165; *Lord* v. *Atkins*, 138 N. Y. 184; Washb. on Easements [4th ed.], 294; *Child* v. *Chappel*, 9 N. Y. 246; *Weynaud* v. *Lutz*, 29 S. W. Rep. 1097.) The reservation to the defendant of the control, interest and income of the piers and basin implied no more than a right of reasonable regulation of the traffic and a right to lawful charges. The reservation must not be construed in derogation of the grant. (*Wells* v. *Garbutt*, 132 N. Y. 435; *Duryea* v. *Mayor, etc., of N. Y.*, 62 N. Y. 592; *Blackman* v. *Striker*, 142 N. Y. 55; *Holloway* v. *Southmayd*, 139 N. Y. 390; 3 Washb. on Real. Prop. [6th ed.] 681.) The construction of piers projecting into the basin after 1847 did not create for the dock company a right to build any other pier or obstruction. (Jones on Easements, § 247; *Matter of Twenty-ninth Street*, 1 Hill, 189.) If the "control" reserved to the defendant could in any event include the right to build a dock in the basin or otherwise to obstruct the basin and diminish the accessibility of plaintiff's pier lots, the reasonable character of such exercise of control would present a question of law for this court. (19 Am. & Eng. Ency. of Law [2d ed.], 645; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 268; *Chittenden* v. *Wurster*, 152 N. Y. 358; *Hibbard* v. *N. Y. & E. R. R. Co.*, 15 N. Y. 455; *Vedder* v. *Fellows*, 20 N. Y. 126; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31.)

*John M. Bowers* and *Latham G. Reed* for respondent. The mere delineation on a map of lots proposed to be sold of

**170**  India W. Brewing Co. *v.* Bklyn. W. & W. Co.    [Jan.,

Opinion of the Court, per O'Brien, J.         [Vol. 173.

a basin, does not of itself make any dedication thereof to the public or to proposed purchasers or grant an easement therein, and this is especially the case of such delineation of a public basin or wharf. (*Ice Co.* v. *Shultz*, 116 N. Y. 389 ; *Pearsall* v. *Post*, 20 Wend. 111 ; *Post* v. *Pearsall*, 22 Wend. 425 ; Washb. on Easements [4th ed.], 555 ; Jones on Easements, § 473 ; *C. N. Co.* v. *U. T. Co.*, 46 L. R. A. 826 ; *Palen* v. *Ocean City*, 64 N. J. L. 669 ; *Greene* v. *N. Y. C. R. R. Co.*, 12 Abb. [N. C.] 124 ; *Tifft* v. *City of Buffalo*, 65 Barb. 460 ; *Irwin* v. *Dixion*, 9 How. [U. S.] 10 ; *Parker* v. *W. C. Co.*, 5 L. R. A. 61 ; *Pitcher* v. *N. Y. & E. R. R. Co.*, 5 Sandf. 587.) The Appellate Division having reversed upon the facts as well as the law, this court will not entertain this appeal. (*F. Nat. Bank* v. *Dana*, 69 N. Y. 116 ; *Blair* v. *Lynch*, 105 N. Y. 636 ; *Cunningham* v. *Fitzgerald*, 138 N. Y. 171 ; *Otten* v. *M. Ry. Co.*, 150 N. Y. 401.) If the plaintiff is correct in its assertion that the Appellate Division did not pass upon the question of a grant of an easement, it is difficult to see how in such event it would be entitled to the consideration of that question in this court. (Code Civ. Pro. § 190 ; *Coatsworth* v. *L. V. R. R. Co.*, 156 N. Y. 451 ; *Schenck* v. *Barnes*, 156 N. Y. 316 ; *Hearst* v. *Shea*, 156 N. Y. 177 ; *Steinway* v. *von Bernuth*, 167 N. Y. 498 ; *Matter of Robinson*, 160 N. Y. 448.)

O'Brien, J. The plaintiff recovered a judgment at the trial for the relief demanded, but it was reversed upon appeal on the law and the facts, and, hence, if the judgment involved any questions of fact the case is not reviewable in this court. It is reviewable, however, if only questions of law are involved and there is no dispute about facts or inferences of fact. The controversy involves the mutual rights, duties and obligations of the parties to this action in and to the Atlantic Basin, an artificial harbor which for commercial purposes furnishes access to the sea for the warehouses and commercial establishments that surround it. The rights of the parties depend upon certain conveyances and transactions made and

entered into more than sixty years ago between the respective grantors of the parties. Whatever legal rights were granted or reserved in these conveyances inure to the benefit of the parties to this action and may be asserted by either of them, since they only take whatever their respective grantors had. The defendant acquired its title and rights in the basin through a deed from the Atlantic Dock Company on January 28th, 1895. That company was incorporated by chapter 215 of the Laws of 1840 for the purpose of erecting and maintaining docks, bulkheads, piers, basins, dry docks, foundries and warehouses for commercial purposes in Brooklyn within the line established by law for the erection of docks, and was authorized to receive reasonable dockage and wharfage from all persons using the same. It procured the title to a considerable tract of land and land under water and constructed the present basin and the wharves and docks surrounding the same. The basin is described as two-fifths of a mile in length, six hundred and sixty feet wide on the southeasterly side opposite the plaintiff's property and one thousand feet wide on the westerly side. The income of the corporation was to be derived from the sale of lots upon which to erect warehouses around the basin and from charges for wharfage and dockage. It was organized for purely commercial purposes, and its financial success depended upon a judicious management of the property and the exercise of the powers conferred by its charter. The defendant has succeeded to all the rights, powers and privileges of this company. In 1841 this company made and caused to be filed a map showing such basin and wharves, with the streets owned by it surrounding the basin, with the lands fronting on the wharves or streets divided into lots and numbered. In July, 1842, the company conveyed to Griswold certain lots situated at the northerly end of the basin. There were twenty-five lots distinguished in the deed by numbers and described on a map of the property. The language of the deed is: " All the lots lying on the easterly side of the said India Wharf, and for the precise locality of each of the said lots reference is hereby made to

172    India W. Brewing Co. *v.* Bklyn. W. & W. Co.    [Jan.,

Opinion of the Court, per O'Brien, J.    [Vol. 173.

the said map, which map is filed in the office of the clerk of the county of Kings, subject, however, to the right of way in common with others over the streets or space between the said lots and the outside line or face of the dock in the basin side of said lots, which street or place is fifty feet wide as laid down on their said map." The consideration of the deed was forty thousand dollars, and it contained full covenants. It was provided that in case a store or warehouse should be erected on the lots or any of them, the building should be constructed in a certain manner and with certain materials. It will be seen that the deed did not bound the property conveyed on the basin but at a point fifty feet westerly, with the street or wharf between the lots and the edge of the basin. The deed expressly reserved to the company, the grantor, " the right to all dockage or wharfage as well as the entire control, interest and income of all their piers, docks, bulkheads and basin." The grantor bound itself " to keep the said piers, docks and bulkheads in repair at their own proper cost and expense." On the 24th of November, 1842, the company, in consideration of twenty-five thousand two hundred dollars, conveyed to Griswold twenty-five other lots to the east and in the rear of the lots just conveyed. Subsequently, and in the year 1847, by consent of all the parties in interest, the width of India Wharf was reduced from fifty to forty feet and the ten feet added to the Griswold property. By a subsequent instrument executed in 1848 between the company and the grantees of certain lots all the lots conveyed are described as fronting the basin as described on the map. At that time the basin was free from all obstructions, there being no pier or dock except the pier, wharf or dock surrounding the basin. Whatever rights or easements were embraced in these conveyances to the grantee they are now vested in the plaintiff as the owner of the same property under various mesne conveyances from Griswold. By a provision in the deed of 1842 the owner of any store or warehouse erected on any of the lots conveyed was to " have the right of laying down railways from each of the said lots to the outside line of said dock in

such manner as will admit carts and carriages to pass over them with convenience and so as not to obstruct the passageway."

The plaintiff claims that under these deeds and the map referred to it is vested with an easement of access to and from the wharf in front of its property, consisting of a warehouse and brewery, to the extent of over four hundred feet along the wharf in front of the property, and it was for what was deemed to be an invasion of that right that the present action was commenced to restrain the defendant from making certain changes in the piers that have been constructed in the basin in front of plaintiff's property. It appears that at various dates since the year 1860 the company has constructed at least four piers in the basin in order to add to its capacity and to facilitate the business of the company. Neither the plaintiff nor any other lot owner on the basin made any objection to these changes in the interior of the basin. The evidence in the case would seem to indicate that it was all done with at least the tacit assent of the lot owners. The changes which the company made and is about to make are described upon the map and brief submitted as follows: It has built certain piers on both the east and west sides of the basin. Two piers have been built on the west side, one known as pier thirty-six, being about nine hundred and eight feet long, the other known as pier thirty-seven, being about nine hundred and six feet long. On the other or east side in front of plaintiff's property it constructed pier thirty-four, being about nine hundred and eleven feet long, and pier thirty-five in front of plaintiff's property, connecting with pier thirty-four, which latter pier thirty-five is, to the point of connection, some six hundred and twenty-eight feet in length, and the object of the present action is to prevent the defendant from destroying the connection between piers thirty-four and thirty-five and continuing the latter to its junction with India Wharf. In other words, the defendant by extending the pier thirty-four about one hundred and fifty feet to the wharf in front of plaintiff's property, it is said, did obstruct, at least to some extent, the access to and from the wharf in

front of plaintiff's property and interfere with the use of the basin at that point. It is obvious that the space in the basin in front of plaintiff's warehouse for mooring boats and landing goods alongside will be reduced by the construction or extension of the pier to the edge of the wharf. Where the plaintiff had some four hundred and twenty feet of the basin in front of the warehouse as a means of access by boats and water craft to the wharf, it will now have when the pier is extended some eighty-seven feet less. The learned counsel for the plaintiff contends that the grant to Griswold secured to the plaintiff an easement of access in the basin, and that the approach to the wharf through the basin must be kept free from all obstructions and just as it was when the grant was made. The learned counsel for the defendant denies this proposition and insists that the extension of the pier to the wharf is but an exercise of that control and management of the basin which the company reserved in the deed to Griswold. The right to extend the pier to the wharf in front of the plaintiff's warehouse presents the whole controversy in the case.

The learned counsel for the plaintiff contends that this is a pure question of law arising upon the construction of the grant from the dock company to the plaintiff's remote grantor. The several provisions of that grant, which have already been referred to, must be construed with reference to the nature of the transaction itself and the objects and purposes that the parties had in view. It was a conveyance of real property, not upon the basin itself, but upon a wharf fifty feet wide, separating the property from the basin. Both the wharf and the basin were, according to the stipulations in the deed, to remain private property, the rents and profits of which the grantor expressly retained. The grantor also expressly reserved the right to manage and control the basin and the wharf, and the question is whether this reservation, made with reference to a peculiar kind of property, confers upon the defendant the right to do everything that it has done in and about the basin and the wharves. It cannot be reason-

1903.]  India W. Brewing Co. v. Bklyn. W. & W. Co.  175

N. Y. Rep.]       Opinion of the Court, per O'Brien, J.

ably contended that at the time of the grant in question the parties intended that the only method of landing or shipping goods was to be by boats or vessels moored alongside the wharf. If the company that constructed the basin and the docks for mercantile purposes and for profit was limited in that way by the grants which they made, it would seriously diminish the amount of business that could be transacted in the basin, while if the grants and reservations permitted the grantor to build piers and docks in the basin itself where vessels could land, load and unload, the capacity of the basin, for the purpose for which it was intended, could be very largely increased.

The rights of the grantee in the deed are not analogous to those acquired in a grant of land bounded upon public waters, or upon a public place such as a park or square. The wharf and the basin remain the private property of the grantor, affected only by such public interests as arise from the nature of the business to be conducted. The party owning the basin and the dock was entitled to exercise all its corporate powers to promote its own interest and profit so far as consistent with the rights of other parties to whom they had conveyed lots for the purpose of erecting warehouses.

We think that the act of the defendant, or its predecessor in interest, in constructing the piers and docks in the basin, was a reasonable exercise of the power of control reserved in the deeds. It would be an extreme view of the property rights conferred by the plaintiff's deed to say that because there were no piers in the basin in front of its property when the grant was made none could be thereafter constructed without its consent. The intention of the parties as expressed in the grant no doubt was to give to the plaintiff such use of the dock and the basin as was reasonably necessary in the transaction of its business; but the company in making the grant did not bind itself to preserve the situation as it then existed for all time to come. If the nature of the business called for the construction of docks or piers in the basin, we think it had the right to construct them, even though it

reduced the facilities of the plaintiff and lot owners similarly situated for mooring boats or water craft alongside. If all the lot owners to whom grants were made by the company could thus limit the use of the basin, the business might prove unprofitable to the company. On the other hand, the construction of the piers at both ends of the basin has undoubtedly added largely to the facilities for the transaction of business. The space for mooring boats or vessels in front of the plaintiff's warehouse may be reduced, but so long as it has reasonable means of access to and from the basin, no property right acquired by the grant has been violated. The reference in the deed to a map on file was for the purpose of identifying the particular lots sold, their location and situation; but since the other provisions in the deed reserved to the grantor the whole income and profits to be derived from the use of the basin and the wharves, the easement of access secured to the plaintiff was subject to reasonable regulation and control by the company. When a person sells lots exhibited upon a map referred to in the deed and bounded by a street, the purchaser obtains an easement in the street. Whether the proposed street is ever actually dedicated to the public or is accepted, it becomes by the grant a means of access to the lot by the purchaser and all claiming under him, unless changed by contract, waived or abandoned. It was so held in the cases cited by the learned counsel for the plaintiff. (*Lord* v. *Atkins*, 138 N. Y. 184; *Cunningham* v. *Fitzgerald*, Id. 165; *Haight* v. *Littlefield*, 147 N. Y. 338.) But this general principle is not applicable in its full scope and meaning to the case at bar. If it appeared in the cases cited that the grantor of the land expressly reserved to himself the ownership, use and control of the designated street with the right to receive the rents and profits, they would bear a much closer resemblance to the case at bar, and it cannot be doubted that the nature of the grantee's easement in the street would then be quite different. In the present case the grantor sold certain lots bounded by a wharf in front of which there was a navigable basin artificially constructed for commercial purposes that furnished access from

the wharf to the harbor. The grantor expressly reserved the ownership and control of both the wharf and basin with the right to charge surrounding owners of warehouses for the use of the same. The grantor was bound to keep them both in repair, that is to say, suitable for the wants of business and commerce for which alone they were valuable. The business was not then fully developed, but both parties to the grant must have contemplated that the business would not only grow in volume, but change in the method of transacting it. Certainly the grantor would have the right to dredge out the basin and make it deeper if the convenience and necessities of the situation required the change. When the grant under which the plaintiff acquired title from the company was made the whole end of the basin fronting the lots conveyed was practically free from piers and all other obstructions as the property was represented on the map. The practical question is, did the grantee by his deed acquire the absolute right to insist upon that condition of the basin for all future time. If so, some right and power to control the basin must have passed with the lots conveyed and full control was not reserved by the grantor notwithstanding the clear language of the reservation. The fact that the basin was represented at that time without piers or obstructions was not in the nature of a covenant on the part of the company that it should remain so for all time, although reference was made to the map for the purpose of identifying the lots. The reservations in the deed, when construed in the light of the business that both parties had in view, are inconsistent with the right of the grantee to forbid reasonable improvements and changes in the basin. If the business expanded, as it evidently has, so that it could not be transacted at the wharves surrounding the basin, then the company had the right to furnish additional facilities by the construction of piers such as that which the plaintiff seeks to enjoin in this case. The company owed duties to the public, as well as to the lot owners, and these duties were not to be measured by the facilities which existed when the enterprise was in its incipi-

12

ent stages. The interests of the company and the duties that it owed to the public authorized and required it to enlarge the facilities for the transaction of business in every reasonable way, and it was not restricted in that respect by the grant or the map to which it referred. The ownership of the basin and the wharves, with the right to the income and profits to be derived from both, and the obligation to keep them in repair with the reservation of full control, implies all that, and, hence, if the construction of the pier in question was convenient or necessary for the transaction of the business to which the basin and wharves were devoted, no property right of the plaintiff was invaded. So it cannot, we think, be said as matter of law that the defendant violated any of the plaintiff's rights when it attempted to extend the pier and wharf in question. No one, we think, can fairly assert that the defendant had no right to construct piers in the basin at some point or points. How many piers it had the right to construct and at what points was a question it had the right to determine for itself, subject only to the rights of the parties to whom it had conveyed property for warehouses surrounding the basin.

If we were compelled to decide the case as one of law upon the present record, we should say that the act of the defendant was reasonable and within its rights as reserved by the deed; but it is evident from the record that the case was not tried or decided below upon the theory now suggested. On the principle that the grantee in the deed took nothing but an easement of access to and from the wharf through the basin, the nature and extent of that easement does not seem to have been considered thus far in the case. The controversy in the courts below seems to have turned upon the claims of the plaintiff to be the owner in fee of some part of the basin. As the learned court below reversed the judgment in favor of the plaintiff at the trial upon law and facts, it is quite possible that, under certain circumstances, the right to construct the pier in question might involve a question of fact. The defendant has no right to so control and manage the basin as

to cut the plaintiff off entirely from access to the water. On the other hand, the plaintiff has no right to insist upon unreasonable restrictions. Whether the act of the defendant complained of was reasonable or unreasonable might, therefore, under some circumstances, involve an inquiry of fact depending, among other things, upon the nature of the changes in the business and the necessity for improvement. We do not assert that it is a question of fact upon the present record, but since the aspect of the case now presented does not seem to have been tried or considered below, we are not disposed to foreclose the plaintiff by an affirmance of the judgment. We do not think, however, that the contention of the learned counsel for the plaintiff, that the basin must at all times be kept entirely free from piers and as it was when the grant was made, can be sustained.

The appeal should, therefore, be dismissed, with costs.

Bartlett, J. (dissenting). I am unable to agree with the majority of the court that this record discloses a disputed question of fact, or conflicting inferences to be drawn from admitted facts, upon which the Appellate Division rested its judgment of reversal.

The order of reversal states that the judgment of the Special Term is reversed on questions of fact and of law, but we have frequently held this statement does not create a question of fact. (*Otten* v. *Manhattan Railway Co.*, 150 N. Y. 395, 401.)

Whether there is a question of fact is always a question of law which the court decides for itself by an examination of the record.

The sole question in this case is one of law and depends upon the construction to be given the deeds of 1842 and 1848, and the maps of 1841 and 1847. Upon this construction alone rests the plaintiff's right of access from its premises to the Atlantic Basin.

The Special Term decided, in reference to the acts of defendant as to which complaint is made, " that such entry

by the defendant and the partial construction of said pier in the said water slip or water way is unlawful and illegal and was done without the consent and against the will of the plaintiff and in violation of the rights of the plaintiff in the said slip or water way."

It also decided "that the further construction of said pier, or the maintenance of the portion of the same already constructed, will seriously and irreparably damage the said property of the plaintiff and diminish the value of the same."

These findings, that the action and proposed action of the defendant were an invasion of the rights of the plaintiff, were necessarily based on a construction of the deeds and maps to which reference has been made and only involved a question of law.

The record contradicts the statement contained in the order of reversal, that it was based on questions of fact and of law.

The determination of the Appellate Division that plaintiff is not the owner of the India Wharf did not dispose of this case. The question still remained what rights were vested in the plaintiff by the deeds and maps in question.

There was very clearly established by the documentary proofs an easement of access in plaintiff to the Atlantic Basin, a right which seems to be conceded by defendant, and we thus have presented an interesting and important question of law, on undisputed evidence, as to whether the defendant is invading that easement.

The evidence relating to the four piers that have been erected inside of the basin since the deed of 1848 is wholly immaterial and has no bearing upon the legal question presented by this appeal. If the plaintiff or any other abutters upon the basin saw fit to allow the construction of those piers by express permission or without protest, that fact confers no right upon the defendant to erect other structures.

The sole question now presented is, what were the legal rights of the plaintiff under its title deeds, and the maps explaining the same, at the time this action was begun.

There is a further objection to the dismissal of the appeal, based on the fact that the prevailing opinion discusses the merits of this controversy and decides the only question in the case against the plaintiff.

This portion of the opinion is doubtless *obiter dictum*, yet if the dismissal of the appeal is, as intimated, an act of grace to the plaintiff, it should be permitted to depart the court in pursuit of any supposed remedy that may survive this decision, untrammeled by a hostile discussion of the merits.

I vote against the dismissal of the appeal on the ground that only a question of law is before the court which it must decide.

Parker, Ch. J., Gray and Haight, JJ., concur with O'Brien, J.; Bartlett, J., reads dissenting opinion; Cullen and Werner, JJ., absent.

Appeal dismissed.