All concur, except that as to the admissibility of evidence of other transactions ANDREWS, Ch. J., BARTLETT and VANN, JJ., express no opinion; and GRAY, J., dissents, except as to sufficiency of indictment.

Judgment accordingly.

---

HENRY OTTEN, Respondent, v. THE MANHATTAN RAILWAY COMPANY, Appellant.

1. COURT OF APPEALS — JURISDICTION — ORDER GRANTING NEW TRIAL ON EXCEPTIONS — CONSTITUTION, ART. 6, § 9 — CODE CIV. PROC. § 1022. An order granting a new trial on exceptions, within the meaning of the clause of the Constitution (Art. 6, § 9) which authorizes appeals, as of right, to the Court of Appeals, from orders of the Appellate Division of the Supreme Court, "granting new trials on exceptions, where the appellants stipulate that upon affirmance judgment absolute shall be rendered against them," may be founded on an exception filed, as provided by the Code of Civil Procedure (§ 1022), to a decision which does not state separately the facts found.

2. APPEALS FROM ORDERS GRANTING NEW TRIAL. An appeal from an order of reversal of the Appellate Division, made by a divided vote, granting a new trial, on exception filed, in an action tried by the court or a referee, and stating that it is upon questions of fact, or questions of fact and law, raises a question of law as to whether there was any evidence to support the view of the Appellate Division, and if there is no material question of fact appearing in the record, the Court of Appeals has power to review; but if it appears that there was any material and controverted question of fact, and, hence, that the Appellate Division had power to reverse upon the facts, its decision is final, and the Court of Appeals must, by force of the restriction of its jurisdiction to the review of questions of law, affirm the order or dismiss the appeal therefrom.

3. ELEVATED RAILROAD ACTION — APPEAL FROM ORDER GRANTING NEW TRIAL — QUESTION OF EXCESS OF INJURY OVER BENEFITS. When, in one of the usual actions against an elevated railroad company for an injunction and damages, the Special Term decides that the railroad has inflicted no injury upon the property of the plaintiff when the benefits are taken into account, and dismisses the complaint by a decision which does

| | |
|---|---|
| 150 | 395 |
| 152 | 436 |
| 150 | 395 |
| 154 | 217 |
| 154 | 724 |
| 150 | 395 |
| f157 | 177 |
| 150 | 395 |
| 158 | 9 |
| 158 | 463 |
| 150 | 395 |
| 160 | 479 |
| 150 | 395 |
| 161 | 122 |
| 161 | 604 |
| 162 | 263 |
| 150 | 395 |
| 163 | 224 |
| 163 | 357 |
| 150 | 395 |
| 165 | 402 |
| a165 | 483 |
| 150 | 395 |
| e172 | ²420 |
| 150 | 395 |
| j173 | ²179 |
| e173 | ²342 |

not state the facts separately, and the plaintiff files an exception to the decision, an appeal to the Court of Appeals from an order of the Appellate Division, not made by unanimous vote, reversing the judgment and granting a new trial "upon questions of fact and law," raises the question whether there was any substantial evidence of excess of injury; and if an examination of the record discloses any evidence which shows that a question of fact was presented for determination, the decision of the Appellate Division is final, and the appeal therefrom will be dismissed.

*Otten* v. *Manhattan R. Co.,* 2 App. Div. 396, appeal dismissed.

(Argued May 26, 1896; decided October 20, 1896.)

Appeal from order of the Appellate Division of the Supreme Court in the first judicial department, entered March 24, 1896, which reversed on questions of fact and law a judgment in favor of defendant, entered upon a decision of the Superior Court of the city of New York at Special Term, dismissing the complaint, and granted a new trial.

The nature of the action, and the facts, so far as material, are stated in the opinion.

*John F. Dillon* and *Julien T. Davies* for appellant. This court has jurisdiction of the appeal. (Const. N. Y. art. 6, § 9; Code Civ. Proc. §§ 190, 1022, 1337; *Baldwin's Bank of Penn Yan* v. *Butler,* 133 N. Y. 564; *Bohm* v. *M. E. R. Co.,* 129 N. Y. 576; 131 N. Y. 520; *Harris* v. *Burdett,* 73 N. Y. 136; *Wright* v. *Hunter,* 46 N. Y. 412; *Sands* v. *Crooke,* 46 N. Y. 568; *Snebley* v. *Conner,* 78 N. Y. 218; *A. Nat. Bank* v. *Wheelock,* 82 N. Y. 119; *Chapman* v. *Comstock,* 134 N. Y. 509; *Pharis* v. *Gere,* 107 N. Y. 231; *Martin* v. *N. Y. L. Ins. Co.,* 148 N. Y. 117.)

*William W. Badger* for respondent. The order appealed from grants a new trial and recites that the judgment against plaintiff is in all things "reversed on questions of fact and of law." This appeal should, therefore, be dismissed. (Const. of N. Y. art. 6, § 9; Code Civ. Proc. §§ 190, 191, 1337, 1338; *Koehler* v. *Hughes,* 148 N. Y. 507; *Boyle* v. *N. Y., L. E. & W. R. R. Co.,* 115 N. Y. 636; 109 N. Y. 650; 143 N. Y. 675; 119 N. Y. 626; 127 N. Y. 643.)

VANN, J.    This is the usual action for an injunction and damages against an elevated railroad company in the city of New York.    The premises in question consist of two lots of land situated upon the easterly side of Ninth, or Columbus avenue, each with a frontage of twenty-five and a depth of seventy-four feet.    The buildings standing upon these lots are two five-story houses erected in 1887, of the same size and value, each twenty-five by sixty feet and numbered respectively 783 and 785.    There are stores on the ground floor, with two suites of five rooms each on the four floors above.    The plaintiff purchased the property, substantially as it now is, in 1888 for $43,000, and at the time of the trial it was all rented and produced annually an aggregate of $4,260.    The apartments at the rear, which have light and air without obstruction, rent for the same amount as those in front.

When this action was commenced in January, 1891, the railroad of the defendant, which was built in 1879, consisted of a double track forty-seven feet and seven inches above the surface of the street, or on the same level as the window sills in the fifth story of plaintiff's houses.    When the action was tried in March, 1894, there was a third track, as was proved without objection, used for express trains, which ran at short intervals at the rate of thirty miles an hour.    They did not stop within a long distance of the premises in question, which are between 98th and 99th streets, and substantially equidistant from the nearest stations at 93d and 104th streets, where the regular trains, running on the double tracks, were in the habit of stopping.    The structure upon which the tracks are laid is in the usual form and substantially covers the front of plaintiff's property, while the three tracks and the track walks cover a large part of the street below.    Access is obstructed as usual, while light and air are obstructed more than usual.

The locality was undeveloped until after the road was built, when building began and rapidly increased, while values increased from $2,000 a lot in 1878 to $16,000 and over at the time of the trial.    The population of the district has grown with surprising swiftness, as indicated by the sale of tickets at

the 93d street station, which in 1881 amounted to 265,272, while in 1893 it had increased to 3,115,060.  The trial court did not separately state the facts found, but in stating the grounds upon which the issues were decided held "that although the plaintiff's easements have been interfered with by the defendant, the plaintiff has been fully compensated therefor by the resulting benefits of defendant's acts, and has suffered no pecuniary injury for which he is entitled to compensation; and, since the defendant's road has been built with full authority of law and now exists and is being operated by like authority, the plaintiff has no equitable cause of action; and that the plaintiff has failed to show any loss of rental values due to the defendant's acts during his ownership."

Judgment was directed dismissing the complaint, but without costs.  The Appellate Division reversed the judgment on questions of fact and of law, upon the ground that the value of the premises in question should be ascertained as of the time of the trial; that the court should consider whether the operation of the defendant's road is a present benefit, without regard to the benefits which have resulted in the past, and that as now operated the railroad is of no sub· stantial benefit to the property of the plaintiff, owing to other means of access, while its operation and maintenance are a substantial injury.  (2 App. Div. Rep. 396.)  One of the learned justices dissented.  The defendant appealed from the order of reversal, and gave the usual stipulation for judgment absolute if the order should be affirmed.

At the outset our power to review is challenged by the respondent upon the ground that the Appellate Division reversed the judgment of the Special Term, as stated in the order from which this appeal is taken, upon the facts as well as the law.  Our present Constitution, after limiting the jurisdiction of this court to the review of questions of law, provides that "no unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact, or a verdict not directed by the court, shall be reviewed by the Court of

Appeals." (Const. art. VI, § 9.) This has no application to the case before us, because the decision of the Appellate Division was not unanimous, and instead of affirming, it reversed the findings of the court below. The next sentence, however, of the same section is more important, as it is the basis of our present jurisdiction, which is both conferred and limited by it, in these words, viz. : " Except where the judgment is of death, appeals may be taken, as of right, to the said court only from judgments or orders finally determining actions or special proceedings, and from orders granting new trials on exceptions, where the appellants stipulate that upon affirmance judgment absolute shall be rendered against them." The order in question did not finally determine an action or special proceeding, as it granted a new trial, so that the first question is whether it granted a new trial " on exceptions." The decision of the Special Term was in accordance with that part of section 1022 of the Code, which authorizes the trial court to " file a decision, stating concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon." After a decision of this character, as the section further provides, " the defeated party may file an exception to such decision, in which case, on an appeal from the judgment entered thereon upon a case containing exceptions, the Appellate Division of the Supreme Court shall review all questions of fact and of law, and may either modify or affirm the judgment or order appealed from, award a new trial, or grant to either party the judgment which the facts warrant." If the " exception " thus authorized has the same meaning as the word " exceptions," as used in the Constitution, it must follow that a new trial granted on exceptions, within the meaning of that instrument, may be founded on an exception of this kind. We see no reason for any difference in the meaning of the same word, as thus used in the Constitution and the Code. It appeared in section 1022 when the Constitution was framed. Its function under that section is the general function of an exception, which is a protest against the decision of a court. (*Sterrett* v. *Third Nat. Bank*, 122 N. Y.

659, 662). It is not a substitute for a notice of appeal, which instead of being dispensed with, is expressly required by the same sentence that authorizes the exception to be filed. Its office is apparently the same as that of the exceptions mentioned in section 994 of the Code, which makes provision for excepting to a decision of a court or referee where the facts found are separately stated. It was by virtue of this exception alone that the Appellate Division had power to review either the facts or the law, and the order of reversal, which could not have been made if the exception had not been filed, is, as we think, an order granted on an exception. (*Baldwin's Bank of Penn Yan* v. *Butler*, 133 N. Y. 564.)

It is further insisted that we have no power to review an order of the Appellate Division reversing a judgment on the facts, because it is provided by section 1337 that an appeal to this court from an order granting a new trial brings up for review by us " only questions of law." The same section, however, provides that where the justices of the Appellate Division are divided upon the question whether there is evidence supporting or tending to support a finding, a question for review is presented. The only other section that is claimed to throw any light upon the question is number 1338, which in its present form has no application, but the omission by the amendment of 1895 (L. 1895, ch. 946) of the last sentence is insisted upon as significant. As it now stands the section simply provides that upon an appeal to this court from an order granting a new trial, after a decision by a court or referee, it must be presumed that the reversal was not upon a question of fact unless the contrary clearly appears in the body of the order, but as it stood prior to January 1, 1896, it further provided that upon an appeal from such an order this court should review the decision of the court below upon the questions of fact as well as the questions of law.

It is clear that we have no power to review a question of fact in a civil case and that our jurisdiction is limited both by the Constitution and the statute to questions of law. When the Appellate Division affirms unanimously upon the facts we

cannot look into the record to see whether there was any evidence to sustain the findings, for the Constitution forbids it. When the Appellate Division reverses upon the facts there is no constitutional inhibition, and a question of law arises as to whether there was any evidence to support the view of that court. If it appears that there was any material and controverted question of fact, the decision thereof by the Appellate Division is final. We cannot now review a decision upon a question of fact when the judgment is of reversal any more than we formerly could when it was of affirmance, except that if there is no material question of fact appearing in the record we have jurisdiction to review, because in that case the Appellate Division would have had no jurisdiction to reverse. As was justly observed by counsel, an appellate court cannot invest itself with jurisdiction to reverse a lawful judgment free from legal error by the mere assertion that it reverses upon the facts when the record shows that there are no questions of fact upon which to base a reversal. It cannot create a question of fact by declaring that there is one, nor, by assuming to reverse on the facts, reverse a determination that does not involve a question of fact. Whether there is a question of fact in a case is always a question of law, depending possibly upon a conflict of evidence and possibly upon conflicting inferences which may be drawn from uncontradicted evidence. Unless there was a material question of fact the reversal was an unlawful exercise of judicial power, and constituted an error that may be corrected by this court. This is substantially the position of the learned counsel for the appellant, and the question, as correctly stated by them, is whether any view, which may fairly be taken of the evidence, supports the determination appealed from. In other words, as the Special Term has decided that the defendant's railroad has inflicted no injury upon the property of the plaintiff when the benefits are taken into account, while the Appellate Division has decided the other way, the question is whether there was any substantial evidence of excess of injury. If there

was not, it was error for the Appellate Division to reverse, but if there was, we cannot weigh it or review it, but must affirm the order or dismiss the appeal. Our examination is, therefore, confined to the inquiry whether there is any evidence in the record which, not according to our view, but according to any reasonable view that may be taken, supports the conclusion of the Appellate Division.

There was an abundance of evidence tending to show that the erection and operation of the defendant's road conferred great benefit upon the plaintiff's property before he became the owner thereof. The conclusion is irresistible that the road built up and developed the section much faster than if it had been left to its normal growth. There was some evidence, all of which was received without objection, tending to show that the benefits conferred belong to the past and were mainly reaped by former owners; that few or none of them now exist, and that the injuries have greatly increased since the plaintiff purchased the property. There was evidence relating to new means of access to the effect that before the elevated road was built no public conveyance ran to the locality, except the old stages, which were not further described, and the Eighth avenue horse cars, which were from an hour upward in getting downtown. In response to a question asked by defendant's counsel as to how many surface roads now run into that region, one witness answered as follows: "They run up Tenth avenue and up the Boulevard and they run up Eighth avenue. They are building a road up Ninth avenue now, but it is not yet running, a cable road. The Boulevard intersects with several lines and nearly every other avenue has a surface line." A more specific answer was given by another witness to a similar question, also put by counsel for defendant, in these words: "They have the Eighth avenue cars. On Amsterdam avenue they have the Ninth, Tenth and Sixth avenue horse cars. On the Boulevard is the Boulevard and Forty-second street line and at present they are building a cable road on Columbus avenue which is a continuation of the present Broadway road. On

the first of May (1894) the Sixth avenue cars will be moved over from Amsterdam avenue to the cable line until the cable is ready to run. The tracks are laid now up to about Eightieth street and from there they have torn up the street and are at work up as far as Ninety-third street" (where one of defendant's stations nearest to plaintiff's property is situated). "Of the present lines now in operation the one which furnishes the most speedy means of getting from the house, No. 790 Columbus avenue, to the downtown business district is the elevated road. Aside from the elevated road I should think (prefer), the Sixth avenue line and change to the cable on Seventh avenue. I have tried to see how long it took to go downtown by that means. I took it from Seventy-eighth street * * * in the evening and went down to the Battery and back shortly after the road was opened. It took me, including the horse cars and cable, I think, fifty-one minutes from the corner of Seventy-eighth street to Whitehall, but that was at night when the street was comparatively free. * * * With the Ninth avenue (elevated) line it can be done in about forty minutes from Eighty-first street station to Battery place, which is the nearest to the other point, and by the Sixth avenue line there is a difference of about five minutes. That would include the walking from 78th to 81st street station. I have timed myself when I had appointments." There was other evidence of a similar character, but none more specific. The learned Appellate Division seems to have taken judicial notice of the fact that the cable road now runs by the property of the plaintiff, and although the defendant's counsel, with great fairness, admits the fact, he insists that it cannot be taken into account upon this appeal, because it does not appear in the record. We think this is the correct view, and we shall allude to the fact only as a probability springing from facts duly proved and for the purpose of illustration.

There was evidence of fresh physical injury, such as the existence of a third track and the running of express trains thereon at a high rate of speed, without stopping within a mile or two of plaintiff's property. While this was not alleged in the

complaint, as it was received without objection and no motion was made to strike it out, the parties are presumed to have consented that the court should consider it, and it was the duty of the court to consider it the same as any other evidence in the case. (*Frear* v. *Sweet*, 118 N. Y. 454.) There was some evidence of inequality in the distribution of the increase of values which followed the building of defendant's road. One witness, whose testimony is at variance with that of all the others who spoke upon the subject, produced figures and evidence of values tending to show that the increase on Ninth avenue was somewhat greater than it was on Eighth avenue, but considerably less than it was on Tenth avenue. The learned trial judge seems to have been somewhat impressed by this evidence, as he observed in his opinion that " the increase in values, except for certain business purposes, has been more substantial a few hundred feet from the road. This is due to the fact that property sufficiently removed from the road to escape its disadvantages, gathers practically all the benefits that accrue to abutting property." Still he reached the conclusion that the plaintiff's property had shared in the general increase of values, which affected the property in the vicinity off the line of the defendant's road, to a degree that overcame all damages sustained.

The Appellate Division was of the opinion that the property on Columbus avenue, in front of defendant's road, had increased in value at a much smaller ratio than property in the adjoining streets, and that the benefit accruing to the locality by reason of the growth of the city had fallen largely upon property in the adjacent streets, and in a comparatively small degree on that abutting upon the avenue over which the elevated railway passes. There was evidence, although slight, of loss of rental value. The plaintiff testified that shortly after he purchased his houses he was forced to reduce the rent on each of his sixteen apartments at the rate of two dollars a month, because they would not rent for more, and they have not at any time since. It also appeared that apartments on streets near by rented for more than those of plaintiff, but

they were somewhat better finished and had more modern improvements.

We have now alluded briefly to the evidence upon which the reversal by the learned Appellate Division was founded. We think that it presented a question of fact for determination by the Special Term, and hence that the Appellate Division had the power to reverse upon the facts. We are not permitted to say whether that power was discreetly exercised or not. We simply decide that it existed. Having reached the conclusion that there was enough evidence of substantial injury to justify the reversal, our duty is ended.

The appeal should be dismissed, with costs.

All concur, except ANDREWS, Ch. J., not voting.

Appeal dismissed.