John D. Bennett, S.
In this adoption proceeding the natural mother consents to the adoption of the infant by her present husband, the petitioner. The application is opposed by the natural father, the respondent.
The mother and respondent were married on December 25, 1954 and the infant was born on November 14, 1955. The marriage was short lived. In February, 1956 the respondent left the marital home and went to his mother’s house. Between the time he left home and April 4, 1956 he made no provision for the support of either wife or child although requested to do so.
A separation agreement was entered into on April 4, 1956. There are three significant paragraphs in this separation agreement : ‘ ‘ eighth : The custody of the child, the issue of the marriage between - and - is hereby given to the wife exclusively and forever. The husband shall not have the right of visitation, and in consideration therefor, the said wife agrees to support, maintain, clothe, feed and educate the said child, the issue of said marriage. The husband, in consideration therefor agrees to waive any claim or right to visit with said child and agrees not to, in any way, interfere with the education and custody of said child.
‘ ‘ ninth : The husband further covenants and agrees that in the event the wife should remarry and should the said wife and her new husband desire to adopt said child, the issue of this marriage, the husband hereby covenants and agrees and by these presents does consent that the said new husband of the wife herein, adopt said child, the issue of this marriage, *422 and the said husband hereby consents to any such further application for adoption and covenants and agrees to acquiesce therein, and to refrain from doing or causing to be done any act or thing whatsoever which in any way interferes with the rights, duties and privileges of said child, when so adopted.
“ eleventh : In the event the husband at any time violates this agreement, or attempts, by legal process or otherwise, to pisit with said child, or obtain rights of visitation, or obtain custody of said child, then and in that event, as a condition precedent thereto, the husband agrees to pay the wdfe from the date of this agreement, the sum of Thirty-seven and 50/100 ($37.50) dollars per week to the date or time when said husband seeks to visit said child or seeks to have visitation rights, or seeks to obtain custody of said child, and the husband shall thereafter contribute and pay to the wiee the sum of Thirty-seven and 50/100 ($37.50) dollars per week for the support and maintenance of said child.”
The provisions of the separation agreement were incorporated in a decree of divorce dated April 10, 1956 obtained by the wife in the State of Alabama. Both parties have since remarried.
Section 111 of the Domestic Relations Law requires the consent of the respondent as a parent unless it can be shown that the respondent abandoned the child. Where no consent is given the court is powerless to grant an adoption in the absence of proof of abandonment. The burden of this proof rests upon the petitioner (Matter of Anonymous, 85 N. Y. S. 2d 358; Matter of Marks, 159 Misc. 348; Matter of Paden, 181 Misc. 1025).
The consent to adoption as set forth in the separation agreement does not satisfy the requirements as to execution of a statutory consent as provided by subdivision 5 of section 112 of the Domestic Relations Law (Matter of Anonymous, 178 Misc. 142). Quaere: If the consent had been a statutory consent conforming to Domestic Relations Law (§ 112, subd. 5) whether such consent could have been revoked at the mere wish of the respondent (cf. Matter of Anonymous, 286 App. Div. 161).
Even though the consent is nonstatutory, ordinarily it is evidence of abandonment commencing with the date of the separation agreement (Matter of Lieblich, 207 Misc. 793; Matter of Anonymous, 80 N. Y. S. 2d 839; Matter of Davison, 44 N. Y. S. 2d 763). Here the circumstances existing at the time of separation and the separation agreement entered into by the respondent when he was represented by counsel, compel a finding of abandonment. At that time the inference that he dropped his “ parental interests, duties and obligations ” may be drawn with “ a considerable degree of clearness and *423 certainty ” from the language of the separation agreement itself (Matter of Bistany, 209 App. Div. 286, 288, affd. 239 N. Y. 19). “ The question is whether the facts as proved at the hearing require a finding that the abandonment has continued to the present date * * * or was terminated by conduct
consistent with the assumption by respondent of his parental rights and duties ” (Matter of Lieblich, supra, p. 795). Here the respondent during the period between February and April, 1956 and continuing after the date of the separation agreement on April 4, 1956 to the commencement of this proceeding on September 6, 1957 made no inquiry concerning his child nor did he make any attempt to see his child. His testimony can only be interpreted as a continuation of the abandonment to the time of the institution of the proceeding:
“ Q. You say you did not go back to your home? A. That is correct.
Q. You went to live with your parents? A. That is correct.
Q. You continued to live with your parents from February or the end of February until the time when the separation agreement was consummated, is that correct? A. That is correct.
Q. Did you ever once from the time you left that house at the end of February and the date of the execution of this agreement on April 6, make any attempt to go back to your home to see your child? A. There was nobody living in the house.
Q. I am asking you now- A. If I made an attempt to
see the child?
Q. Wherever the child was. A. No, I didn’t.
Q. Did you ever make any inquiry of your wife as to the health or welfare of the child? A. There was nobody for me to call to ask.
Q. Did you ever make the inquiry? A. Who was I going to make the inquiry of?
Q. Did you ever try? A. No.
Q. When this separation agreement was consummated you received a sum of money, did you not, in the distribution of the funds? A. Yes.
Q. How much did you receive? A. WTiat was it, $1200?
# * *
Q. In connection with the separation agreement you also received title to this home you were living in in Cedarhurst? A. That is correct.
Q. WTiat did you do with that house? Did you sell it? A. I gave it back to my parents.
*424 Q. Out of the proceeds of whatever you received on this settlement agreement, the.bonds and the savings account, you did not set aside one single dollar of that sum in trust for your daughter, did you? A. I didn’t have any money.
Q. What did you do with the money from the bonds? A. I gave it to my lawyer.
Q. You gave all the money to your lawyer? A. That is correct.
Q. From the day of the execution of this separation agreement until the time in November when your mother testified she made this visit, did you make any effort to contact this child to find out how she was, or to find out anything about her, or to contribute to her support and maintenance? A. I wasn’t supposed to.
* * *
Q. When you left home in February 1956 how old was this baby? A. The baby was born in November.
Q. On what day? A. November 14.
Q. So the child was a little over three months old at that time? A. Yes.
Q. Still an infant? A. That is correct.
Q. You have never seen the child since? A. That is correct.”
As was stated in Matter of Hayford (109 Misc. 479, 481): “If a parent withholds his presence, his love, his care, the opportunity to display filial affection and neglects to lend support and maintenance, such a parent relinquishes all parental claim, and abandons the child.”
The respondent cannot raise the separation agreement which exculpated him from support and maintenance as a barrier in this proceeding. “ The separation agreement cannot be raised as a justification for inaction. Though as a result of this agreement respondent was denied custody of the child and may have been absolved of the duty to support, there were many ways, unavailed of by him — such as, seeing or writing to the child, sending gifts or money to him or to the mother for his benefit — in which respondent could have assumed some parental obligations if he felt bound by them ” (Matter of Lieblich, 207 Misc. 793, 795, supra).
The fact that the respondent’s mother on his behalf may have sought to display some minuscule sign of care or affection for the infant, does not seem to this court to be pertinent. The action or inaction of the natural father vis-a-vis his child is in issue. As to that the conclusion is inevitable that he intended to give up his parental ties and did not deviate from this intention.
*425 On all the evidence the court finds that the petitioner has sustained the burden of proof as to abandonment and that the moral and temporal interests of the infant will be promoted by approving the adoption.
The application by petitioner is granted. The further request that the name of the child be changed is also granted.
Settle decree on five days’ notice.