John D. Bennett, S.
No opinion lends itself more readily to quotations out of context than Matter of Bistany (239 N. Y. 19), a leading case on abandonment in adoption proceedings. The ingredients are present: apparently appropriate language, an opinion written for the Court of Appeals by Judge Cardozo, and an understandable misconception of the powers of the Court of Appeals as they existed in 1924, the date of the opinion. In that matter the Appellate Division below had unanimously reversed the County Court (121 Misc. 540) and “found as a fact that the parents had not abandoned the child ” (209 App. Div. 286, 291). The significance of this unanimous determination becomes apparent when there is considered the language governing the powers of the Court of Appeals as found prior to 1.925 in section 9 of article VI (now § 7) of the New York State Constitution. So far as applicable, that section then read: the jurisdiction of the Court of Appeals, except where the judgment is of death, shall be limited to the review of questions of. law. No unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact or a verdict not directed by the court, shall be reviewed by the Court of Appeals.” In commenting on this constitutional limitation of the court’s powers, Judge Cardozo (then “ of the New York Bar ”) writing in his work, “ The Jurisdiction of the Court of Appeals ” [2d ed., 1909] said (p. 14): “ Where the reversal is upon the facts, a review by the Court of Appeals of the propriety of the decision would *655 violate the command of the Constitution that the court’s jurisdiction shall be limited to questions of law.” See, also, Cohen and Karger, “ Powers of the New York Court of Appeals” (Rev. ed., § 109, p. 464, particularly n. 43), where is discussed the powers of the court under the Constitution of 1895: “ But, of course, the question whether the determination of the Appellate Division was sustained by the weight of the evidence was not available for review in the Court of Appeals. Otten v. Manhattan Ry. Co., 150 NY 395; Health Dep’t v. Dassori, 159 NY 245; National Bank of Deposit v. Rogers, 166 NY 380; Matter of Bistany, 239 NY 19.”
The power of the Court of Appeals, prior to 1925, to consider new findings of fact is discussed in Baylies “ New Trials and Appeals ” ([3d ed., 1923], pp. 518, 519): “ Section 584 of the Civil Practice Act authorizes the Appellate Division to make new findings of fact in eases not tried by a jury. If the Appellate Division has exercised this power and has by the means of new findings reversed or modified the judgment of the Special Term, on appeal to the Court of Appeals the question is whether the evidence is fairly capable of sustaining the findings. * * * If the new findings of fact made by the Appellate Division, and upholding its legal conclusions, have support in the evidence, its decision must be affirmed. As in other cases, the Court of Appeals cannot determine questions of fact, and unless the new findings are erroneous as a matter of law, they must be affirmed.”
This limitation was discussed also in Otten v. Manhattan Ry. Co. (150 N. Y. 395, 400-401): “It is clear that we have no power to review a question of fact in a civil case and that our jurisdiction is limited both by the Constitution and the statute to questions of law. When the Appellate Division affirms unanimously upon the facts we cannot look into the record to see whether there was any evidence to sustain the findings, for the Constitution forbids it. When the Appellate Division reverses upon the facts there is no constitutional inhibition, and a question of law arises as to whether there was any evidence to support the view of that court. If it appears that there was any material and controverted question of fact, the decision thereof by the Appellate Division is final.”
A similar discussion was found in Health Dept. v. Dassori (159 N. Y. 245, 248-249): “Upon appeal to the Appellate Division of the Supreme Court, the plaintiff’s judgment was reversed ‘ upon a question of fact ’ and a new trial was ordered. In this situation of the case, the question is one of *656 the extent of our power of review. Our review, necessarily, must be confined to the inquiry, whether the evidence was of such a character as to preclude any other determination than that reached by the trial court. There having been a reversal, we are not prohibited by the constitutional limitation of our jurisdiction from entertaining the appeal; but we may be prevented from reviewing the determination or order of the Appellate Division, by reason of its having been warranted by the nature of the evidence. It is a question of law whether a question of fact was presented upon the evidence for the determination of the court and, hence, this court gains jurisdiction of the appeal to review the case to that extent; but, if that review results in ascertaining that there was a question of fact, our right to review ceases and we must dismiss the appeal from the order of reversal, for want of any power to review other questions than those of law. We have repeatedly held to this effect and no further discussion of the subject is needed at this time.”
See, also, Reports of the New York Constitutional Convention Committee ([1938], Vol. 2, entitled “ Amendments Proposed to New York Constitution 1895-1937 ”, p. 417 et seq., and particularly p. 476). Section 7 of article VI (substantially following the amendment of 1925) now reads: “ The jurisdiction of the court of appeals shall be limited to the review of questions of law except where the judgment is of death, or where the appellate division, on reversing or modifying a final or interlocutory judgment in an action or a final or interlocutory order in a special proceeding, finds new facts and. a final judgment or a final order pursuant thereto is entered ”. (See, also, Civ. Prae. Act, §§ 602, 605.)
An erroneous assumption that the language now found in the Constitution (art. VI, § 7) was in effect in 1924, makes it understandable how with perfect sincerity, time after time, litigants have appeared in this court quoting Matter of Bistany (239 N. Y. 19, supra), and have urged the fallacious rule that on the issue of abandonment the natural parent must be given the benefit of eyery controverted fact, no matter how improbable the story and no matter how unworthy of belief his testimony appears to the trier of the facts. For this argument the following anachronistic quotations from Matter of Bistany are relied on: “To prevail they must be able to show that even though the parents be given the benefit of every controverted fact, a finding of abandonment follows as an inference of law ” (p. 21). “ Again we must assume the acceptance of the parents ’ *657 version ” (p. 22). “We are unable to. yield to the petitioners’ contention that the facts above recited point so decisively to an abandonment that every other inference must be held to be excluded” (p. 23).
In view of the discussion of the history of the court’s powers, it is more apt to quote as properly stating the principle considered by the Court of Appeals (p. 24): “ After the finding by the Appellate Division adverse to the petitioners, the order under review must stand unless we are prepared to hold that by acts so unequivocal as to bear one interpretation and one only the parents manifested an intention to abandon the child forever.” (Italics supplied.)
Note also the statement in the dissenting opinion (p. 25) : “ The sole question which the appeal brings before this court is whether the undisputed facts establish the abandonment as a matter of law. All disputed facts have been resolved in favor of the respondents and are binding upon this court. What I consider the material facts, as bearing on the question of abandonment, are not in dispute.” (Italics supplied.)
This is not to deny that the burden placed on the adopting parents to show abandonment is a heavy one. Only unequivocal and absolute abandonment by the parent warrants a severance of blood ties (Matter of Morris, 157 Misc. 333; Matter of Willing, 271 App. Div. 935, affd. 298 N. Y. 566; Matter of Serby, 2 A D 2d 988; Matter of Bistany, supra).
On the other hand, the court owes an obligation to the child and the adopting parents to find an abandonment when a proper showing has been made that the parent has neglected and refused to perform his natural and legal obligations of care and support, when he has withheld his presence, the demonstration of parental affection, or the opportunity on the part of the child to display filial affection. Failure to perform such duties by a parent constitutes a relinquishment of parental claims and an abandonment of the child (Matter of Anonymous, 9 Misc 2d 420; Matter of Paden, 181 Misc. 1025, 1027; Matter of Hayford, 109 Misc. 479, 481; and, see, cases cited in dissenting opinion, Matter of Bistany, supra,).
Measured against this yardstick, it is apparent that the natural father in the instant proceeding is more intent on retaining “ title ” to his 15-year-old son than in performing the obligations incumbent upon him as a parent. His own testimony, if believed, was that he saw his child twice about eight years ago, and has not seen him since. He states that his failure to see the child since then was the result of the mother’s failure *658 to notify him of her address. His own efforts to learn the whereabouts of the mother and child can hardly be described as determined. He admitted knowing from the date of her remarriage in 1951 that his wife had married the petitioner stepfather herein, who was (and still is) a member of the United States Air Force. If he had wished to do so, the respondent could have learned, through the channels available for locating members of the Armed Forces, the address of his ex-wife and their child. He admitted making no effort to do this.
A number of undisputed facts make his testimony unconvincing. The divorce decree required a deposit of $10 a week with the clerk of the court. He never made a single such deposit and had not, up to the date of the last hearing, contributed a penny to the support of his child. Nor has he made any effort during the last seven years to communicate with his former wife or their child. The court places no credence in his testimony as to his meager efforts to see the child in 1950 or 1951. Admittedly he knew where his wife lived until March 1, 1952, and did not write her before or after that date.
In the opinion of the court the respondent stretched the facts beyond recognition in an attempt to show some provision for the child by stating that he had purchased two insurance policies, one in the sum of $5,000 and the other in the sum of $10,000, and that his son was the beneficiary of those policies. It was stated that the policies would be submitted to the court. When the policies were not produced after several months, the hearing was reopened. At the resumption of the hearing it developed that two policies in the principal sum of $1,000 each had been issued in 1951 but were permitted to lapse. Parenthetically, it should be noted that one policy covered death of the insured by accidental means, the weekly premium being 10 cents. The other policy was a 20-payment-life policy with a weekly premium of 85 cents. There was some further discussion with respect to policies in which the respondent’s mother was the beneficiary. These policies, however, were not produced and would seem to bear no relation to the issue other than on the question of credibility.
On all the evidence the court finds the petitioners have sustained the burden of proof as to abandonment, and that the moral and temporal interests of the infant will be promoted by approving the adoption.
The application by the petitioners is granted.
Settle decree on five days’ notice.