John D. Bennett, S.
Petitioner applies to adopt Ms stepcMld, the only issue of a prior marriage between his wife and the respondent, the father of the child. The respondent’s objection to the adoption requires a dismissal of this proceeding unless the petitioner has sustained his burden of proving the allegation of respondent’s abandonment of the child (Domestic Eelations Law, § 111; Matter of Anonymous, 9 Misc 2d 420; Matter of Paden, 181 Misc. 1025).
The child’s mother and the respondent were married on June 17, 1951. Initially the couple resided at an apartment in Manhattan where the rent was approximately $82 per month. In the Spring of 1953 they moved to another apartment, again in Manhattan, a short distance removed from the apartment occupied by the maternal grandparents. The rental for this apartment was $140 per month. Apparently the difference between the two rentals was made up by the mother’s father. The respondent testified that he objected to the move to the second apartment, and to the installation of a private telephone line between the two apartments as manifestations of further interference by his former in-laws. According to him, he and his wife were constantly in the company of his wife’s parents.
Another source of irritation to the respondent was his wife’s critical view of his earnings, which according to her testimony were in the neighborhood of $45 to $50 per week. The respondent stated that he was continually berated by his former wife because they were not living on the same economic and social level as their parents. However, the wife contends that she was subject to constant attack by the respondent caused by his lack of financial success. The tensions between husband and wife apparently continued until sometime in January, 1954, when the wife left the apartment, taking the child. The respondent says her leaving was completely unexpected, and that he first discovered she had gone upon his returning home from work. He phoned her at her mother’s apartment, and asked her to return. She did later, only to leave a second time permanently. The wife says that her former husband had been forewarned of her departure each time, and that such departures were the result of respondent’s temper and threats by him to divorce her.
Following the mother’s last departure, the respondent was advised of an abnormality of the child’s hip and of the necessity *579 of certain medical expenses. He accompanied his wife to doctors, and contributed some of the expenses.
In June, 1954, the mother instituted proceedings for the support of the child in the Domestic Relations Court of the City of New York. The court directed the respondent to make certain payments, which he made for a time. It granted him visitation rights, which he availed himself of steadily according to his version, but spasmodically according to the mother’s testimony. It is conceded that he made at least three or four visits and possibly more, during the Summer of 1954, to a summer home in New Jersey to which the mother had taken the child. Upon the facts here presented, the court finds there was no abandonment by the father up to the time of the agreements hereinafter mentioned, which were entered into between the father and mother.
On November 9, 1954, two agreements, one of separation and another embodying a consent to any future adoption, were signed by the respondent. The separation agreement grants sole custody and control to the wife, in consideration of her waiving support for herself and the child. By its terms, the husband “ shall not have any right of access to nor any right to communicate with or visit with the child at any place at any time hereafter ’ ’. The separation agreement was mentioned and approved by the court in a decree of divorce granted in the State of Georgia on January 27, 1955.
Abandonment has been said to be any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child (Matter of Anonymous, 16 Misc 2d 1010; Matter of Davis, 142 Misc. 681). As stated above, the burden of demonstrating abandonment is the petitioner’s and only unequivocal and absolute abandonment of the child will suffice to dispense with the required consent of a parent (Matter of Anonymous, 13 Misc 2d 653; Matter of Norris, 157 Misc. 333).
Although the agreement of November 9, 1954 contains a consent to any future adoption, such a consent does not satisfy the requirements of the statutory consent provided for under section 112 of the Domestic Relations Law (Matter of Anonymous, 178 Misc. 142). However, it has been held to be some evidence of an abandonment at the time the nonstatutory consent is given (Matter of Lieblich, 207 Misc. 793).
In Matter of Anonymous (9 Misc 2d 420) this "court had occasion to consider the effect of a similar consent to a future adoption embodied in a separation agreement. There, however, *580 the facts differed materially from those present here. At page 422 of the decision this court said: “Here the circumstances existing at the time of separation and the separation agreement entered into by the respondent * * * compel a finding of abandonment.” (Italics supplied.) It is apparent from such statement that the consent to a future adoption was only one of the elements considered by the court in arriving at its determination. It was not in and of itself conclusive.
Here the respondent, after the wife vacated the apartment for the last time, continued to show interest in the welfare of the child by accompanying the mother in visiting doctors, and contributing, even though only partially, to the child’s medical bills and to her support as directed by the Domestic Relations Court. During the Summer of 1954, he visited with the child periodically, and continued to do so approximately up to the date of the separation agreement which foreclosed any further contact with his daughter. Thereafter, the respondent says he attempted to contact the child by phone surreptitiously, by making anonymous phone calls starting in 1955 and continuing-through to 1959. On one occasion he succeeded in eliciting from an individual who answered the phone that t-he child was across the street playing in a park, and then he went to the general area in an attempt to see the child, without any success. Further, the respondent states that he was subjected to constant harassment in his visits with the child prior to the separation agreement, and that attempts were made to thwart such visits by the employment of excuses as to the child’s health. This is denied by the mother’s testimony which states that he was never refused permission to see the child at any time prior to the separation agreement.
It is interesting to note the more or less parallel facts here present with those in Matter of Willing (298 N. Y. 566) with the exception that in the Willing ease there does not appear to have been any consent to a future adoption, by the father. There the father was given visitation rights on Sundays, of which he failed to avail himself, except in one instance in October, 1942, when he requested to see the child away from the mother’s home. Here the respondent was absolutely foreclosed by an agreement from any contact with his child. It would appear that the petitioner, in attempting to sustain his burden of proving abandonment, is using an agreement which both the father and mother entered into prohibiting any contact whatsoever between the child and her father. The respondent may have well considered himself bound by the agreement, especially since such agreement had been mentioned and approved by *581 the court in the decree of divorce. Another similarity is that the respondent testified that, since the separation agreement and divorce, no requests to pay medical bills or to support the child have been made by the mother. The respondent may well have considered, as in the Willing case, the admittedly comfortable financial circumstances of his former in-laws as affording ample means for the support of the child. Under this view of the agreement, it takes on the aspect of nothing more than a valid custodial arrangement, which is not an indication of abandonment, but is on the contrary, an act of parental supervision and control (cf. Matter of Anonymous, 192 Misc. 359).
Under the circumstances, there is nothing that the father has been called upon to do with which he has failed to comply. For this reason the court cannot at this time make any finding of abandonment. If in the future circumstances should arise which would require the father to support or care for the infant, or in any other way exercise parental duties or control, and he should fail so to do, then in such event there could be a basis for this court to make a determination of abandonment.
Although the court believes that the welfare of the child would in all probability be promoted by the granting of this application for adoption, the court is unfortunately not permitted to give any weight to such considerations (Matter of Bistany, 239 N. Y. 19).
The petition is accordingly dismissed and the application denied.