Alonzo J. Prey, S.
This is a proceeding in which the petitioners, Joseph L. Pratt and his wife, Patricia Ann Pratt, seek an order approving the adoption by them of the infant child, Jeffrey Carol Nuttall. The petitioner, Patricia Ann Pratt, is the natural mother of the infant child, Jeffrey Carol Nuttall, born to her while she was married to the respondent, Howard Nuttall.
The petitioner, Joseph L. Pratt, is the second husband of the petitioner, Patricia Ann Pratt, the petitioners having been united in marriage on November 21, 1959, after an Alabama divorce granted to Howard Nuttall, the former husband of the petitioner, Patricia Ann Pratt, in which it is assumed she consented under the Alabama law.
The validity of the Alabama divorce between Patricia Ann and Howard Nuttall is not challenged, nor is the legality of the marriage between Joseph L. Pratt and the petitioner, Patricia Ann Pratt, the natural mother of the child whose adoption is sought.
*589 Prior to the Alabama divorce which took place in October of 1958, the natural parents of the child, Howard Nuttall and the then Patricia Nuttall, entered into a separation agreement dated October 9,1958, by which it was provided that the custody of the child, Jeffrey Carol Nuttall, should remain in the mother and the father agreed to pay $10 per week for the support of the child and it was further provided in the agreement that the natural father would have reasonable rights of visitation and it was further provided in said separation agreement that in the event that a decree of divorce or annulment was obtained that the provisions of the separation agreement would be incorporated in such decree or annulment, but (1 if impossible to be incorporated therein, it shall not merge and shall survive and be enforceable.” The Alabama divorce decree between ■ the respondent, Howard Nuttall, and the natural mother of the child, now Patricia Ann Pratt, was silent as to custody and as to support. The divorce simply dissolved the marriage contract.
The petition in this case was presented to the court on June 23, 1960, and at that time an order was made which directed that notice of the adoption be given to Howard Nuttall, the natural father, and who was the plaintiff in the Alabama divorce proceeding, and said order also provided that the Cattaraugus County Welfare Department be designated as the agency to investigate and make a report pursuant to section 112 of the Domestic Relations Law as to the propriety of the adoption. The return date of the show cause order was July 11, 1960. At that time, the respondent appeared, claimed that he had been unable to confer with his attorney and the matter was adjourned to the 25th day of July, 1960, at which time the respondent again appeared and claimed that he had been unable to obtain the services of counsel and the matter was again adjourned to the 22d day of August, 1960, and the respondent was directed to obtain counsel who would prepare and file his answer to the petition on or before August 15, 1960.
All parties in interest appeared on the adjourned date, August 22, 1960, and the respondent’s reply to the plaintiff’s petition was presented to the court and proof of mailing of the same to the attorneys for the petitioners within the time directed was made. The respondent’s answer contained a copy of the separation agreement which was entered into between the natural parents of the child on October 9, 1958.
The proof of the parties was presented and the testimony of the petitioner, Patricia Ann Pratt, the natural mother, in particular was taken in great length covering a period from the date of her marriage to the natural father of the child, Howard *590 Nuttall, and tracing the course of their marital problems from that date at Marysville, California, to the date of their separation in Jamestown, New York, in 1958, which included at least two attempts in which they endeavored to reconcile their differences and live together. The proof indisputably presents a picture of the failure on the part of the natural father, Howard Nuttall, the respondent here, to have adequately supported and maintained his wife or the child and the natural mother of the child had to obtain help from her own parents and part of the time from the parents of the natural father in order to subsist.
After their first separation in 1957, she worked and provided as well as she could for the support of herself and her child in her parent's’ home and, during that period of separation, the only amount which she received from her husband, the respondent Nuttall, was one payment, the sum of $10. On their reattempt to enter into a marital relationship in 1958, they endeavored to set up housekeeping at Jamestown, New York, but again the natural mother was compelled to obtain help from her own parents in order to subsist and they separated in the Fall of 1958. The separation agreement was entered into shortly after that final separation and the Alabama divorce followed.
The proof indicates that the father never attempted to visit the home where she lived with the child, saw him only on one or two occasions at the most, and then not by a planned or intended visit, never sent cards, gifts or presents except once, a card which had 10 dimes attached to it and at another time, a small toy dog. The gift of the toy dog occurred in the year 1957. There was never any effort on the part of the natural father to comply with the provisions of the separation agreement by the payment of $10 per week for the support of his child and, on his own admission, never made any payments.
The respondent’s allegation, that his visits to the home of his wife’s parents were denied, is not supported by the testimony. He has never demonstrated any affection for the child, nor has he ever given an opportunity for the child to express filial affection for him and the only attempt on the part of the natural father to see the child or its mother occurred, on his own statement, following a Mother’s Day conference which was held at the apartment of the natural father at Jamestown at which were present the petitioners, the child and the natural father and at which conference the adoption proceeding was discussed. He has never made any attempt to visit the petitioners ’ home, by his own statement, until after the conference at Jamestown and he alleges that he made two attempts, but on *591 both occasions found the petitioners and his son not at home. There has been no attempt to hide or conceal the infant from his natural father. The respondent has known during all the time of the separation where his wife could be found. His parents ’ home and the home of the parents of the natural mother are in the same township only a short distance apart and if he had had any desire to visit his child, he could have found the means so to do. The only occasions where it was indicated that he had had an opportunity to see the child, there was no proof of any attempt on his part to show any filial affection for the child or to permit the child to show any affection for him. The proof indicates that the respondent’s failure to perform his natural and legal obligations .of care and support by withholding his presence, the demonstration of parental affection or an opportunity on the part of the child to display filial affection, constitutes a relinquishment of parental claims and an abandonment of the child.
The burden is on the petitioners to show abandonment and it is a heavy burden because only unequivocal and absolute abandonment by a natural parent warrants a severance of blood ties (Matter of Norris, 157 Misc. 333; Matter of Willing, 271 App. Div. 935, affd. 298 N. Y. 566).
The sole question to be determined in this proceeding is: “ Has there been an abandonment by the natural father of the child within the meaning of section 111 of the Domestic Relations Law which will permit the adoption without the consent of the natural father.”
The court has a duty to the child and the adopting parent to find an abandonment where a proper showing has been made that the parent has neglected and refuses to perform his natural and legal obligations in respect to such child. It is apparent that the natural father in this proceeding has failed to demonstrate, by action or intent, any love for the child or any desire to have a part in his support, maintenance and education. It is uncontradicted that for a period of over two and one-half years the respondent, the natural father of said child, has made no effort whatsoever to see the child and has made no contributions for the support and maintenance of the child. Such conduct which has been established by the uneontradieted testimony is such as to constitute a complete relinquishment of parental claims and an unequivocal and absolute abandonment by him of the child (Matter of Anonymous, 9 Misc 2d 420; Matter of Naden, 180 Misc. 1025; Matter of Anonymous, 13 Misc 2d 653).
In my opinion the petitioners have met the burden of proving the abandonment and, therefore, the consent of the natural *592 father is not required in order to grant the relief prayed for in the petition.
On all the evidence the court finds that the petitioners have sustained the burden in this adoption proceeding of proving the abandonment on the part of the natural father of said infant and that the moral and temporal interests of the infant will be promoted by approving the adoption. The investigation report of the Cattaraugus County Welfare Department made by the Supervisor of Child Welfare, recommends approval of the adoption.
The petition, therefore, is granted. The further request that the name of the child be changed is also granted.
The motion by respondent at the closing of the petitioners’ case for dismissal of the petition, which motion was renewed at the conclusion of the presentation of testimony, is denied.
Decree approving the adoption and granting the change of name may be submitted forthwith.