Harry G. Herman, S.
Section 111 of the Domestic Relations Law provides that in an adoption proceeding ‘ ‘ The consent shall not be required of a parent who has abandoned the child ”. In this application, the father opposes the adoption of his 11-year-old son by the husband of his former wife, the boy’s mother, and denies any abandonment.
Certain facts were stipulated at the outset of the hearing: the objecting father and the child’s mother were married in October, 1950; the child was born in March, 1952; the parents separated three years later and a separation agreement was entered into in November, 1953; the mother obtained a divorce in July, 1954. The mother always had custody of the boy and married the petitioner, who now seeks the adoption, in April, 1956. The child’s name was changed by consent of the natural father, apparently for social and school record purposes, by the addition of the petitioner’s surname. It was also conceded that the petitioner, an attorney, was qualified to be a good father and that there was an attachment between him and the boy.
The separation agreement of November, 1953 provided inter alia (a) that the wife was to have custody of the boy and should maintain, educate and support him; that the father would have rights of visitation on either Saturdays or Sundays, or, at his option, could take custody of the child on either day and return him to his wife’s residence; (b) that he pay her minimum of $25 per week every Saturday for the support and maintenance of his wife and child (40% thereof for the wife and 60% for the child) and that this minimum weekly payment was “ based on a gross weekly income on the part of the husband in the sum of $75; ” if his earnings increased in excess of $75 per week he was to pay her one third of his weekly earnings “ to be allocated in the manner herein provided.” The agreement was to be incorporated in any future divorce decree and was to survive such decree. If the wife remarried her 40% part of the weekly payments would terminate, but the 60% part for the child’s support would continue until his majority.
*237 The objecting father testified that during the two years following the separation he paid his wife a total of about $500 in 1954 and 1955 which he had borrowed, and that he paid nothing for the past seven years (1956 to date); that he remarried in April, 1961 and his present wife goes to business and maintains their apartment and that he borrows money from relatives and friends to maintain himself. He testified that he and his late father met with serious financial reverses at the end of 1953; that he since has earned absolutely nothing during the past 10 years, but has been endeavoring during this period to recoup the family investments that had been lost. He testified that he visited the child once every two or three weeks during the years 1953 to 1958, but that in May, 1958 when the petitioner and his wife took up residence in Westchester County, the petitioner forbade him to come to see the child. This was contradicted, but the respondent made no effort and took no steps to enforce his rights of week-end visitations or custody, as provided in the agreement and admittedly has not seen the child for the last five years. He testified that he did send two or three letters during this period to the child and either a letter or a wire on his birthdays; no gifts were sent to the child in the past five years and he knows nothing of the boy’s schooling.
Upon a comparable set of facts the court in Matter of Porras (13 A D 2d 239) concluded that a finding could be justified of abandonment and that consent would not be necessary for adoption; the court did conclude however, because of other unusual circumstances in that case, that there was no abandonment and dismissed the adoption petition. Those circumstances, however, do not exist in the instant case. As impoverished as the father was, he certainly could have financed an occasional trip to see his child during the last five years; there is no evidence here of any rejection of any gifts or greetings; and he should have insisted on his visitation rights had he possessed, during this five-year period, some minimal degree of paternal concern or interest.
The burden of establishing abandonment in such cases is upon the petitioner, and it is, as the court said in Matter of Porras (supra), a heavy one; but the record here, and the objectant’s own testimony can lead to no other conclusion. A five-year period disclosing nothing but two or three letters and an annual birthday card or telegram is no more than a gossamer thread between a parent and child and is as close to a complete abandonment as it is possible to visualize. The objectant’s admission that in almost 10 years his earnings were “ zero ”, *238 as he put it himself, reflects his indifference to his obligations as a parent (cf. Matter of Nuttall, 24 Misc 2d 588, appeal dismissed 12 A D 2d 729). Abandonment has been defined in Matter of Maxwell (4 N Y 2d 429, 433) as “ a settled purpose to be rid of all parental obligations and to forego all parental rights ”. The objecting father comes within that definition.
Objections overruled.