IN RE ADOPTION OF BRYANT v. KURTZ ET AL.

[No. 19,649. Filed April 19, 1963.]

*Leon J. Mills, White & Mills, John P. Price* and *Hollowell & Hamill,* of counsel, all of Indianapolis, for appellant.

*Sparrenberger, Duvall, Sullivan & Sharp,* and *Joseph P. Sullivan,* of Indianapolis, for appellees.

HUNTER, (Acting) P. J.—This was an adoption proceeding commenced under the provisions of §3-115, *et seq.,* Burns' 1946 Replacement, and tried as an adversary proceeding in the Marion Probate Court. Dorothy Ann Bryant, mother of Edith Ann Bryant, deceased former wife of the respondent, Gerald Bryant, suffered a tragic death by burning as a result of an automobile collision on *July 14, 1959.* The appellees (petitioners below) filed an application for guardianship for Edith Ann Bryant in the Marion Probate Court on *July 22, 1959.* The appellees filed

original petition for adoption on the *28th day of July, 1959* alleging their residence to be in *Sunland, California*. Thereafter on *September 28, 1959* they (appellees) filed their amended petition for adoption of said child alleging their residence to be in *Indianapolis, Indiana*.

*The appellant, Gerald Bryant, (respondent below) never executed a consent to the adoption of his daughter, Edith Ann Bryant*. It was stipulated that the appellant and Dorothy Ann Bryant, deceased, were the natural parents of Edith Ann Bryant.

The petition for adoption was granted by the Marion Probate Court on December 16, 1960.

The appellant filed his motion for new trial in due time, which motion challenged the decision of the court as being contrary to law and not sustained by sufficient evidence. Thereafter the trial court overruled said motion for new trial from which ruling the appellant perfected this appeal.

It will be noted from an examination of the chronological resume' of the proceedings that the appellant within fourteen (14) days following the death of his former wife and natural mother of said child was in court resisting the adoption proceeding and opposing the appointment of a guardian.

Undisputed facts having a direct bearing on the result of these proceedings are these: that from its birth the child was continuously in the custody of its mother until the latter's death; at the time of the death of its mother, the child was twelve (12) months and nineteen (19) days of age; that during all of said time the mother and child resided in the home of the maternal great grandparents of said child; that the appellant visited with his child frequently; that he offered support for said child which was refused by its mother; that the appellant father car-

ried a life insurance policy on his child; that the appellant carried hospitalization insurance for her; and acknowledged her as his child; that after the death of his former wife, appellant offered to support his child while she was in the custody of the maternal great grand-parents almost immediately following the death of its mother and said support was finally accepted and he continuously paid the sum of twelve dollars ($12.00) per week to and including the time of the granting of the petition for adoption.

The pertinent portions of the adoption statute, Burns' Annotated §3-120 are as follows:

> "If such child have parent or parents living, he, she or they shall consent in writing to such adoption. . . . Such consent of parent or parents may be dispensed with if such child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition... In all cases where the father of any child or children has failed to pay any support money for a period of one (1) year immediately prior to the filing of adoption proceedings for the adoption of his child or children, the court may in its discretion not require the filing of a consent of the father in such instances. (Acts 1941, ch. 146 §6, p. 438; 1943, ch. 40, §5, p. 89.)"

The decree of the court as it applies to the issues here presented is set forth as follows:

> "And the Court being duly advised in the premises finds:
>
> That upon the filing of the original petition herein, and at the time of filing the amended petition herein on September 28, 1959 the father of said child had never supported said child, and that said child at such time was abandoned and deserted by the father under the terms of the Statute:

The Court further finds that at the time of the divorce of the father and mother of said child said child was unborn and was not mentioned in the divorce decree, and that its existence was unknown to the father, but that even after learning of the child being born to the mother *the father failed to support and provide for said child* until after the filing of the amended petition for adoption herein;

*The Court further finds that under the terms of the Statute the consent of the father is not necessary under the circumstances above related and that, thereupon, the Court had jurisdiction of this cause at the time of the filing of the petition and of the amended petition, and once having jurisdiction it becomes the Court's duty to make a finding and decree for the best interests of said child;"* (Transcript p. 45 and 46). (Our emphasis).

An order and decree of adoption was entered by the court consistent with the above findings.

The appellee relies principally on the case of *Emmons* v. *Dinelli et al.* (1956), 235 Ind. 249, 133 N. E. 2d 56, as support for the trial court's finding of abandonment and desertion by the appellant of his child.

The rules governing the issue were enunciated by our Supreme Court in the *Emmons* v. *Dinelli et al, supra,* case and may be summarized, we believe, as follows:

". . . there can be no adoption in the absence of consent, unless the ultimate fact of abandonment or desertion is found to exist." p. 259.

"As a prerequisite to every adoption, a relinquishment by the natural parents must be found to exist." p. 265.

". . . relinquishment by consent is the voluntary act of the parent, relinquishment by abandonment is by operation of law. In the latter case it is only necessary that the 'intention' or 'settled

purpose' of the parent exist as to his non-performance of his required parental 'duties and obligations.' p. 265.

". . . the careless and negligent failure to perform the duties of parenthood is a significant element of the offense of abandonment or desertion, which neglect is to be considered regardless of any actual 'intention' or 'settled purpose' by the parent to relinquish the proprietary claim of the parent to his child." p. 260.

A parent's "legal title" or "proprietary claim" to a child's filial affection and obligation depends upon the parent's acceptance of correlative duties and responsibilities and where a parent neglects his duties to care for, support, educate, give moral and spiritual guidance and provide a home and the love and security which a home provides, he will have relinquished his claim to his child by operation of law. p. 269.

It was also stated in the *Emmons* v. *Dinelli et al., supra,* case re the determination of the ultimate fact of abandonment and desertion that the law should receive a liberal construction to the end that unfortunate children who have been bereft of home and parental care may be afforded the benefits of an adoptive home and parental care citing the case of *Leonard* v. *Honisfager* (1909), 43 Ind. App. 607, 609, 88 N. E. 91, and further that ". . . the statute is not to be so strictly construed as to defeat its purposes. . . ." *Emmons* v. *Dinelli et al., supra,* quoting from *Bray* v . *Miles* (1899), 23 Ind. App. 432, 436-437, 54 N. E. 446, 448, 55 N. E. 510. We believe that no court could seriously disagree with any of the above quoted rules and we cannot envision a different result on the statement of facts there presented.

However, since the relationship between parent and child is a bundle of human rights of such funda-

mental importance, it has generally been held that adoption statutes being in derogation of the common law should be strictly construed in favor of a *worthy parent* and the preservation of such relationship.[1] *Therefore the rules in the above paragraph need be tempered by the rule that neither should the statute be so liberally construed that it would destroy safeguards erected for preservation of family relationships.*

On the question of parent and child relationship we quote with appropriate pertinency from *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 179 N. E. 773:

> " 'Of the many ties that bind humanity, that which unites the parent and the child is the earliest and the most hallowed . . . and in all civilized countries it is regarded as sacred.' Therefore, 'parents have the natural right to the custody of their children,' and 'where one parent is dead, the surviving parent, if fit, has the right to the custody.' "[2]

A point of caution perhaps should be injected at this juncture.

Adversary proceedings for the adoption of a child must be carefully distinguished from those involving a question of its custody as the former involve more serious consequences and are of real import. Custody may be awarded for a temporary duration but a decree of adoption severs forever

---

1. *In Re Cozza* (1912), 163 Cal. 514, 126 Pac. 161; *Nevelos* v. *Railston* (1959), 65 N. M. 250, 335 P. 2d 573 and cases cited.

2. See also *In Re Adoption of Smith* (1961), 229 Ore. 277, 366 P. 2d 875 and *Pickett* v. *Farrow* (1960), — Ky. App. —, 340 S. W. 2d 462. This is by far the best rule in that it is consistent with the preservation of the family as a unit, as distinguished from the so-called "Illinois Rule" which seems to lead the trend towards state paternalism. See Annotation 39 A. L. R. 2d 258.

every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another. For all legal and practical purposes a child is the same as dead to its parents. The parent has lost the right to ever see said child again or to have any real knowledge of its whereabouts. The Duckworth case quoted above and the cases mentioned immediately below in this paragraph are all cases involving guardianship, divorce, or habeas corpus proceedings and in such matters the courts are more inclined to look at the material welfare of the child than to rights of the natural parents. Nevertheless, these cases are interwoven with a strong fiber of judicial protection to help bind the parent and child in their natural relationship, i.e., ". . . where the child is in the hands of a third person, that presumption is in favor of the father." *The State, on the relation of Sharpe* v. *Banks* (1865), 25 Ind. 495, ". . . The reasons must be strong and cogent that would justify a court in withholding from him (the natural father) a right thus conferred by the positive law of the land, and in consonance with the law of nature and the dictates of common humanity." *Henson* v. *Walts et ux.* (1872), 40 Ind. 170; ". . . In order to overcome the presumption of law that the best interest of the child would be subserved by placing it in the custody of the father, who is responsible for its being, and who, under the laws of God and of man, is held responsible for its care and protection, it must plainly appear that the father is unworthy of the trust." *Gilmore* v. *Kitson* (1905), 165 Ind. 402, 74 N. E. 1083; ". . . appellant, under the circumstances, in view of the fact that he was the father of the minor in controversy, presented, at least, a prima facie claim or right to be awarded

the custody thereof as against appellee, her legal guardian." *Berkshire* v. *Caley* (1901), 157 Ind. 1, 60 N. E. 696; "In this state the father, if a suitable person, . . . has the preference to the custody of the person, control and education of their legitimate minor children, . . ." *McDonald* v. *Short, Supt.* (1921), 190 Ind. 338, 130 N. E. 536; "At common law parents had a natural right to the custody of their children, . . . and we have statutes declaratory of the common law in this respect. . . . Also under the decisions and opinions of our courts ordinarily a parent who is of good character and reasonably able to provide for his or her child is entitled to its custody as against others." *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N. E. 2d 417.

Therefore to complete the analogy, these cases are even more impressive to the court when considering the case at bar than would they be were this merely a custody action since the protection of the rights of the natural parents in adoption proceedings will always be carried to a further degree than are they in the custody cases. The criteria established in the cases above charts merely the first part of the court's duty to protect the rights of natural parents in adoption proceedings.

Relative to the issue of abandonment and desertion in the instant case *it should be noted* that the only period of time upon which the decree of the trial court could operate (6 months immediately preceding the filing of adoption petition, Burns' §3-120, *supra*) *was during the period that the mother of said child was alive and during all of which time the child was not bereft of home and parental care, quite the contrary, it had both, a good home and the maternal care of its mother.* In the case before us the child's parents were divorced four (4)

months and thirteen (13) days after their marriage and before the mother realized she was pregnant. Upon the birth of the child, the father acknowledged it, gave it his name, and agreed with the mother that she should have custody of their child. We judicially know that where the parents are legally separated or divorced a *worthy mother* has the right to the custody of her infant child not only by virtue of well recognized principles of law but she also holds such child by *"decree of nature"* and would remain its custodian so long as the special maternal care incidental to its tender age was necessary. *The State, on the relation of Sharpe* v. *Banks, supra,* also see *Ramsey* v. *Ramsey* (1889), 121 Ind. 215, 23 N. E. 69. In order to sustain the trial court's finding of abandonment and desertion on the facts in this case we would perforce be required to hold as a matter of law that the mere acquiescence of the father in the mother's custody of their infant child would constitute a relinquishment of his parental rights and claims to their child prior to the death of its mother. This we cannot do. Therefore we hold that such acquiescence was merely following the "decree of nature" and was not an evincement of a "settled purpose" or "intention" to forego parental duties and obligations, and neither does it constitute a careless and negligent failure to perform parental duties and responsibilities, and it therefore cannot be construed to be an implied relinquishment of his claim to his child.[3] To hold otherwise would put in jeopardy the rights of a surviving parent not having custody of his or her children as it would allow, upon the death of the parent having

3. *In Re Schwab's Adoption* (1947), 355 Pa. 534, 50 A. 2d 504. In *Re Walpole's Adoption* (1955), 5 Ill. App. 2d 362, 125 N. E. 2d 645. *State* v. *Neuroth* (1916), — Mo. App. —, 181 S. W. 1061.

custody, any stranger the opportunity to sever the child from its surviving natural parent.

The trial court also found that waiver of consent was effectuated by the father's failure to support for one year (Burns' §3-120, *supra*). And again in this instance it must also be noted that the only period of time upon which the trial court's decree could operate was for one (1) year immediately prior to the filing of the adoption proceedings (Burns' §3-120, *supra*), and during the time the natural mother was living. Upon a review of the evidence we find the record is completely devoid of *any proof* that support or support money was needed for or by the child, requested by the mother, or withheld by the father. Nor is there any evidence of a court order requiring the father to pay support money. But quite the contrary, there was uncontradicted evidence that an offer of support was made by the appellant and rejected by the mother saying that "she could take care of the baby herself." The evidence is uncontradicted that the mother was employed for almost the entire period of twelve (12) months and nineteen (19) days, the age of the infant child at the time of her mother's death.

The facts as related above do not evince a dereliction of duty on the part of the appellant and can in no way support a finding of an implied relinquishment of his parental rights.[4] Therefore

4. There are many cases from other jurisdictions dealing with this same question which reach this result. Georgia has a statute similar to Burns' §3-115 *et seq.* and in both *Murray* v. *Woodford* (1952), 86 Ga. App. 273, 71 S. E. 2d 275 (court order and no payments) and *Rawdin* v. *Conner* (1954), 210 Ga. 508, 81 S. E. 2d 461 (no support requested or needed) they held that a father had not come within the statute even though he had failed to provide support. See also *In Re Adoption of Prangley* (1960), — Fla. App. —, 122 So. 2d 423 where the mother and father made an agreement at the time of

the trial court could only have found that the *mere lack of support payments* constituted a *failure* within the meaning of the statute. It appears self-evident that this was not the legislative intent and we do not here supply such an intendment. To hold otherwise would put the parental rights of every father that has been deprived of custody of his children at the mercy of the children's custodian to extinguish such rights almost at will, by simply refusing his support.

The petitioner must be prepared to prove that the living parents of the child have so violated their natural and legal obligations to the child that they come within the terms of the statute authorizing waiver of consent of the natural parents. *Child* v. *Dodd* (1885), 51 Ind. 484; *In Re Baker's Adoption* (1955), 100 Ohio App. 146, 136 N. E. 2d 147; *McGowen* v. *Smith* (1956), 264 Ala. 303, 87 So. 2d 429 and cases cited; *Trotter* v. *Pollan* (1958), Tex. Civ. App., 311 S. W. 2d 723; *In Re Anonymous* (1960), 23 Misc. 2d 577, 197 N. Y. S. 2d 954; *Pratt* v. *Bishop* (1962), 257 N. C. 486, 126 S. E. 2d 597; *McClary* v. *Follett* (1961), 226 Md. 436, 174 A. 2d 66; *Moss* v. *Vest* (1953), 74 Idaho 128, 262 P. 2d 116; see also Annotation 35 A. L. R. 2d 662. Thus the parties should not approach the court in equal status. Courts have not hesitated to build a "strong fortress"

---

their divorce that the mother was to have exclusive custody and father need pay no support; *In Re Peters' Adoption* (1961), 113 Ohio App. 173, 177 N. E. 2d 541 voluntary release of child by financially pressed mother with no support did not fall within the Ohio statute which is similar to Indiana non-support statute; *In Re Adoption of Porras* (1961), 13 A. D. 2d 239, 215 N. Y. S. 2d 778 (no demand); *Nevelos* v. *Railston, supra* (no request or need and evidence of a refusal); *In Re Walpole's Adoption, supra,* (no support expected or requested); *Newton* v. *Paslay* (1957), — Tex. Civ. App. —, 307 S. W. 2d 305 (offer of support refused); also 2 Am. Jur. 2d Adoption §33, p. 888.

around the rights of natural parents to their children; for this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established "by clear and indubitable evidence." *Henson* v. *Walts et ux* (1872), 40 Ind. 170; *In Re Kelley* (1914), 25 Cal. App. 651, 145 P. 156; *In Re Adoption of Strauser* (1948), 65 Wyo. 98, 196 P. 2d 862; *In Re Adoption of Walton* (1953), 123 Utah 380, 259 P. 2d 881; *Torres* v. *Van Eepoel* (1957), Fla., 98 So. 2d 735; *In Re De Walt's Adoption* (1958), Fla. App., 101 So. 2d 915; *In Re Walpole's Adoption, supra; Trotter* v. *Pollan, supra; In Re Adoption of Prangley, supra; In Re Adoption of Hangartner* (1962), 407 Pa. 601, 181 A. 2d 280; *Kantorowicz* v. *Reams* (1960), Ky., 332 S. W. 2d 269.

To affirm the lower court's decree of adoption in this case would establish a judicial precedent that would lead to grave social consequences. We judicially know that there are innumerable instances where as a result of unfortunate circumstances a parent or parents are required to place their children temporarily in the custody of relatives until such time as their economic or other problems are alleviated. Such situations exist throughout our state. They are as the appellant asserts examples of family units working out of sometimes tragic and often unfortunate circumstances without the intervention of social, governmental or charitable agencies. Under the trial court's decision in the instant case they would amount to a relinquishment of parental claims and would be sufficient to sever the family relationship at the instigation of a stranger to the blood.

While, as stated hereinbefore, some confusion exists in the application of the "child's best interest

rule" it is never an issue for judicial determination in an adversary adoption proceeding until the ultimate fact of "abandonment or desertion" or "failure to support," has been first established by clear, cogent and indubitable evidence. If we were to sustain the trial court's decision in the case before us we would by judicial precedent, lend approval to and provide a media for, the advance of governmental paternalism. *In Re Force's Adoption* (1956), 126 Ind. App. 156, 131 N. E. 2d 157; *Emmons v. Dinelli, supra.*

It is no doubt true that the child, now approaching her fifth year, and having been with the appellees for over two years, has formed a strong attachment for them as they no doubt have for the child. It may also be true that the Kurtz' are better circumstanced than are the Bryants for bestowing upon her proper care, by way of temporal benefits. But, while these considerations may present a hardship by way of emotional disturbance, they cannot, obviously, enter into and govern the determination of the question of the law applicable to the issues raised here in this adversary adoption proceeding.

Judgment reversed with instructions to the trial court to vacate the decree entered the 16th day of December, 1960 and to sustain the appellant's motion to dismiss the amended petition.

Kelley, Mote and Pfaff, JJ., concur.

NOTE.—Reported in 189 N. E. 2d 593.