IN RE ADOPTION OF REYNARD v. KELLY ET UX.

[No. 668S99. Filed October 15, 1969. No petition for rehearing filed.]

*Jack Welchons,* Marion, *Albert W. Ewbank,* Indianapolis, for appellant.

*Kiley, Osborn, Kiley & Harker,* by *Albert C. Harker,* Marion, for appellees.

GIVAN, J.—This is a matter of the adoption of two minor children whose natural mother, Sydney K. Kelly, is now married to one Charles Ray Kelly, who seeks to adopt her natural children. The natural father of the children is the appellant, Nathan H. Reynard, who appeared in the trial court and objected to the granting of the adoption. It was the decision of the Trial Court that the natural father had deserted and abandoned the minor children and had failed to pay support for them for a period of one year immediately prior to the filing of the petition and therefore, his consent was unnecessary to the adoption.

The Court further found that it was in the best interest of the children that the adoption be granted.

The appellant, who is the natural father of the children, assigns as error in this Court the overruling of his motion for a new trial contending that the Trial Court's decision is not sustained by sufficient evidence and is contrary to law. It is appellant's contention that the evidence shows that he did not, in fact, abandon the children within the meaning of the statute which would authorize the Court to grant the adoption without his consent.

An examination of the evidence shows that the appellant is a fighter pilot in the United States Air Force now stationed in Vietnam. He was formerly married to appellee, Sydney K. Kelly, who, after divorcing the appellant, married Charles Ray Kelly, who is also an appellee. At the time of the divorce the natural mother obtained the custody of the children, and the appellant was ordered to pay support for the children. This he did until June of 1965, which was two months after the marriage of the mother to Charles Ray Kelly.

Following the remarriage of the mother, difficulties arose concerning visitation with the children. This difficulty was aggravated at least in part by reason of the appellant's military duties which prevented visitation on a regularly scheduled basis. The appellant testified that he had, during this period of time, employed seven different attorneys attempting to arrange suitable visitation with his children but had never been able to accomplish this.

During the entire year of 1966, the appellant was on duty in Vietnam and Thailand, during which time he could not have visited with his children under any circumstances.

During the period of time following June of 1965, until the present the appellant had without benefit of a modification order taken it upon himself to refuse to make regular support payments to the extent that at the time of the hearing in the trial court in this cause he was in excess of $5,000.00 in arrears.

In the summer of 1966, the appellant made three $25.00 payments at a time when his monthly income was approximately $1330.00.

In March or April of 1967, immediately upon appellant's return from Vietnam, he sent a $1500.00 Cashier's check to his attorney for presentation to his former wife as a partial payment of back support. However, this check was refused by his former wife and returned to the appellant.

Charles Ray Kelly had filed his petition for adoption on the 24th day of January, 1967. There is also evidence in the record that there had been a change for the better in the children after their mother had married Mr. Kelly. Mr. Kelly himself testified to his love for the children and an interest in them.

The appellant testified that he had remarried, and that he was returning overseas to continue his tour of duty.

There was evidence in the record that the appellant had great difficulty in attempting to visit with his children and it would appear very little cooperation except from his former wife's parents, who appeared to remain on friendly terms with him and aided him somewhat in maintaining a small degree of contact with his children.

There is evidence in the record that the appellant suffered a nervous breakdown during this period of time, and that he himself ruled out visitation on occasion because of his emotional instability and that he was fearful he would upset the children too much by a display of emotion in their presence.

The question before this Court is whether or not the decision of the Trial Court was supported by the evidence and is in keeping with the statute. The statute in question reads as follows:

"If such child have parent or parents living, he, she or they shall consent in writing to such adoption. The minority of any parent shall not in or of itself be a bar to such consent: Provided, however, That if either parent be a minor, consent of such parent must be accompanied by the written approval of the investigating agency aforesaid if any there be and if none, of the state department of public welfare. Such consent of parent or parents may be dispensed with if such child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition. If it appears by indorsement on the petition and by the oath or affirmation of two (2) disinterested persons that such parent or parents or both

are nonresidents or that their residence after diligent inquiry is unknown, then such parent or parents shall be notified of the pendency of the action by publication as provided by law in civil cases. If the parent or parents have been legally deprived of their parental rights over such child for reasons other than economic, the written consent of such parent or parents shall not be necessary to such adoption and no notice of the pendency of such adoption proceedings to such parent or parents shall be necessary: Provided, however, That notice of the pendency of such adoption proceedings shall, in such case, be given to such agency or county department of public welfare of which such child may be a ward. In every case where such child shall have been born out of wedlock consent of the mother of such child shall be deemed sufficient, except that where the paternity of such child has been established by law and the father is adequately supporting such child, or where for any reason in the discretion of the court it is deemed advisable that he be heard, he shall have such notice as to the court seems necessary and the opportunity to file his objection if any, and oppose such adoption, which objection shall be considered and determined by the court. If such child be fourteen (14) years of age or over, his consent shall be deemed necessary before adoption. In all cases where consent of the parent or parents is required such consent shall be signed in the presence of a duly authorized agent of the state department of public welfare or of such investigating agency and so attested by such agent; or by notary public: Provided, however,That such attestation shall not be necessary to the consents signed before the taking effect of this act [§§ 3-115—3-125]. Such state department is hereby authorized to furnish to clerk of courts as aforesaid prescribed forms for use by parents or other persons when giving consent. Copies of such consent when same have been signed shall be filed with the investigating agency aforesaid and with the clerk of the court in which the petition for adoption is pending. Such court may cause notice of hearing and opportunity to file objection to be given to the known kindred of the child and any other person or persons deemed entitled to such notice before granting such petition. In all cases where the father of any child or children has failed to pay any support money for a period of one (1) year immediately prior to the filing of adoption proceedings for the adoption of his child or children, the court may in its discretion not require the filing of a consent of the father

in such instances. [Acts of 1941, ch. 146, § 6, p. 438; 1943, ch. 40, § 5, p. 89.]" Burns' Ind. Stat. Ann. Sec. 3-120.

The above statute has been interpreted by this Court as follows:

> Admittedly, there can be no adoption in the absence of consent, unless the ultimate fact of abandonment or desertion is found to exist. The issue with which we are concerned involves the criterion or evidentiary facts necessary to support the ultimate fact of such abandonment or desertion. In determining the elements or criterion of the words 'abandoned or deserted'; as used in our adoption statute, we look first to the language and purpose of the statute. (Here the Court cited the statute.)

> . . . . .

> "Significantly our adoption statute omits the use of the word 'wilful'; as characterizing the abandonment or desertion. In contrast, the Ohio statute uses the term 'wilfully abandon' and, in construing that statute, the probate court of that state stated with reason that ' . . . The word "wilfully" as used in the statute has a definite meaning which requires that neglect of the parents must be intentional. Without the word being used the neglect of duty could be caused by carelessness and neglect and, therefore, be unintentional. . . .' In re Adoption of Gates (1948), 84 Ohio App. 269, 270, 85 N.E.2d 597, 598. Therefore, looking to the language of our statute, we conclude that the careless and negligent failure to perform the duties of parenthood is a significant element of the offense of abandonment or desertion, which neglect is to be considered regardless of any actual 'intention' or 'settled purpose' by the parent to relinquish the proprietary claim of the parent to his child." *Emmons v. Dinelli* (1956), 235 Ind. 249, 259, 133 N.E.2d 56.

The fact that appellant had made some token payments prior to the filing of the petition for adoption and had subsequent to the filing of the petition for adoption tendered some $1500.00 on a $5,000.00 arrearage does not, in our opinion, comply with the meaning of the statute, even though the statute does have the language

". . . has failed to pay any support money for a period of one (1) year . . ."

Prior cases in Indiana which we have examined deal with the situation where the father has made no payment whatsoever within the year immediately prior to the filing of the petition for adoption. Therefore, in the case at bar the question is presented as to whether or not a token payment of some $75.00 during the year immediately prior to the filing of the petition for adoption is sufficient to comply with the terms of the statute thus requiring consent of the natural father.

In the use of the above language can it be said that the legislature meant that nominal support payments would be sufficient? We think not. If such is to be the interpretation, then a natural father could forever block adoption of his children by making a yearly payment of a dollar, and then refuse to give his consent. We hold that the legislative intent must be interpreted in this statute to mean that where the natural father has the ability but fails to substantially comply with any order of support previously entered by a Court or fails to make substantial contributions to the support of his natural children, his consent is not necessary to the granting of an adoption.

This same problem was encountered by the Supreme Court of Louisiana when they were faced with a similar factual situation and a similar statute. That Court stated:

"The basis for requiring the consent of parents to adoption is the natural right of the parent to his child. If a parent does not fulfill his parental responsibilities to his child, there is a reasonable basis for dispensing with his consent. We think the Legislature here was attempting to define conduct which would be a failure of the parent to fulfill his responsibility of support of his child, whereby the parent would forfeit his parental rights.

. . . . .

"In construing the statute here under consideration which dispenses with consent in adoption proceedings under cer-

tain conditions, we are mindful of the above pronouncements, but we do not propose to give the statute such a strict interpretation as to make it ineffective and inoperative. To hold that under the statute there must be a complete refusal or failure to pay any sum whatever for one year before consent would be dispensed with would be to disregard completely the obligation which a parent has to provide support and maintenance for his child. Such a holding would permit an unworthy parent, in complete disregard of his obligation to his child, to prevent an adoption which might be to the best interest of the child by making a token payment of a nominal sum once each year insufficient to provide for maintenance and support. Such a strict construction would lead to absurd consequences and make the statute meaningless and ineffective." *In re Ackenhausen* (1963), 244 La. 730, 739, 154 So.2d 380.

In making this decision we are *not* condoning the difficulty which the appellant met in attempting to establish visitation with his children. However, in all matters of this nature, the total welfare of the children must be the paramount consideration, and no natural parent regardless of the difficulties he may be experiencing with his former spouse is justified to unilaterally, without benefit of court order, refuse to pay the amount of support previously ordered by the Court. When he chooses this avenue of redress, regardless of his love and affection for the children, he places himself in a position of removing the necessity of his consent to their adoption. Adoption can then be granted, if it be demonstrated to a Court of probate jurisdiction that the welfare of the children will be best served.

In the case at bar the Trial Court heard the evidence and had the parties before him. This Court will not overturn a decision of the Trial Court under the above circumstances. We will not weigh the evidence. *J. I. Case Co. v. Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519; *Woods v. Deckelbaum* (1963), 244 Ind. 260, 191 N. E. 2d 101.

We hold that the failure of the appellant to provide support was a fact upon which the Trial Court could base its decision

that the consent of appellant was not necessary. We further hold that there is evidence in the record upon which the Trial Court was justified in finding that it was to the best interests of the children that the adoption be granted.

The judgment of the Trial Court is affirmed.

DeBruler, C. J., Arterburn and Hunter, JJ., concur; Jackson, J., dissents with opinion.

### DISSENTING OPINION.

JACKSON, J.—I am unable to agree with the determination reached by the majority in the case at bar and dissent thereto.

As stated in the majority opinion, this case comes to us by way of appeal from the decision of the Grant Circuit Court granting the adoption of appellant's minor children to appellee without the written consent of the father. The action was instituted below on January 24, 1967, by Charles Ray Kelly, second, and present husband of the divorced wife of appellant, filing a petition to adopt the two minor children of appellant and his divorced wife, now Sydney K. Kelly. The court granted the petition and ordered such adoption, the decree bearing date of March 22, 1968, to be entered nunc pro tunc as of December 26, 1967.

The petition filed herein, omitting heading and formal parts, reads as follows:

"Comes now Charles Ray Kelly and petitions the Court for an Order for the Adoption of Infants Raynard (sic), and presents and shows to the Court as follows:

1. That Stuart Glen Raynard (sic) is a white male child born at San Antonio Texas on October 22, 1956.

2. That Toby Kay Raynard (sic) is a white female child born at Myrtle Beach Air Force Base, South Caroline (sic), on June 22, 1959.

3. That both of said children will be known as and shall assume the names of Stuart Glen Kelly and Toby Kay Kelly.

4. That said children do not possess any real or personal property or any interest of any kind or character in any property except that each of said children possess savings accounts in First National Bank of Marion, Indiana, in the said approximate sums of $14.00 to $15.00 apiece and which said accounts are jointly held by said infants along with their natural mother, Sydney Kelly.

5. That the full name of the petitioner herein is Charles Ray Kelly and that he is 33 years of age; that he resides at 1720 Timberview Drive, Marion, Indiana, and that said petitioner was duly married to Sydney Kelly, the natural mother of said children, being married in Marion, Indiana on April 3, 1965, and that they have since said date lived and cohabited together continuously as husband and wife.

6. That the name of the natural father is Nathan H. Reynard and that the *said Nathan H. Reynard has abandoned and deserted said children for more than 6 months immediately preceding the filing of this petition.* (Emphasis supplied.)

7. The petitioner further shows that these children are now in the possession of the petitioner and his wife, the natural mother, and will remain in their home pending this Court's decision.

8. That the said petitioner sincerely desires the adoption of these children as his own and that the best interests of said children would be served by permitting this adoption; that your petitioner is gainfully employed at the Radio Corporation of America in Marion and has sufficient means and income with which to support said children.

WHEREFORE, your petitioner prays the granting of this petition as prayed and for all other just and proper relief in the premises.

/s/ CHARLES RAY KELLY
Charles Ray Kelly

/s/ SYDNEY KELLY
Sydney Kelly

Subscribed and sworn to before me this 24th day of January, 1967.

/s/ W. GORDON CORYEA
W. Gordon Coryea
Notary Public

(SEAL)
My commission expires:
March 4, 1968."

It appears from the record herein that thereafter, on June 15, 1967, there was filed in the trial court an affidavit of non-residence of the natural father (appellant), and notice was ordered issued to him returnable August 7, 1967.

Such affidavit, in pertinent part, omitting heading, formal parts and jurat, reads as follows:

"Georgetta Ball and John M. Dalton being first duly sworn upon their oath depose and say:

That they are adult residents of Grant County, Indiana; that they are personally acquainted with Nathan H. Reynard, the father of Stuart Glen Reynard and Toby Kay Reynard, minor children, whose adoption is being sought in these above noted proceedings by Mr. Charles Ray Kelly, the petitioner herein; that they know of their own knowledge that the said Nathan H. Reynard, natural father of said children, is a Captain in United States Air Force and that his present residence is Eglin Air Force Base, Florida and that, therefore, notice of the filing and pendency of this petition for adoption should be given to the said Nathan H. Reynard by publication provided by law.

Dated this 5th day of June, 1967."

Thereafter, appellant entered his appearance herein by counsel and on September 5, 1967, filed his verified answer and cross-complaint to the petition for adoption filed by Charles Ray Kelly. Such answer and cross-complaint, omitting heading and formal parts, reads in pertinent part as follows:

### "VERIFIED ANSWER AND CROSS-PETITION
### I

Comes now the respondent and natural father, Nathan Reynard, and for his answer to the petition herein, he respectfully says that:

1. He admits the facts stated in rhetorical paragraphs 1 and 2.

2. He denies the allegations of rhetorical paragraphs 3, 4, 5, 6, 7, and 8 of the petition herein.

WHEREFORE respondent and natural father, Nathan Reynard, asks the Court to deny said petition, enter judgment against petitioner and for all other proper relief.

## II

For further answer and cross-petition, the respondent and natural father says that:

1. He is the natural father of Stuart Glen Reynard, who was born at San Antonio, Texas on October 22, 1956 and Toby Kay Reynard, who was born at Myrtle Beach Air Force Base, South Carolina, on June 22, 1959.

2. His former wife, Sydney Reynard Kelly, was granted custody of said minor children when she obtained her divorce.

3. He is a Captain in the United States Air Force and presently stationed at Fort Walton Beach, Florida.

4. As a professional Air Force pilot in the United States armed forces he is not a (sic) liberty to keep a regular visitation schedule with his children. He has had considerable difficulty trying to visit his minor children when he is able to because their mother, and apparently, the petitioner, Charles Kelly, as well as the former in-laws, named Overman, keep interferring. His time for visitation, which must occur during times he can get furloughs from the service, is limited, but his love for his children is not. Further, he spent the entire year of 1966 as a combat Air Force pilot in Viet Nam and was not able to visit with his children during the entire year.

5. He has never abandoned nor deserted his children. Nor does he intend to do so, now, or ever. And that he has tried to file a petition on several occasions to obtain custody of his children so he could have less trouble in visiting with them. And that for reasons of a dispute in falling behind in his support payments the lawyers were not permitted to file the petition which he had signed to obtain custody.

6. As soon as he is able to get any support misunderstanding straightened out, he will again try to get custody of his aforesaid children.

7. He has asked Patrick N. Ryan, of the firm of Ryan & Welchons, to represent him in this matter.

WHEREFORE cross-petitioner and respondent, Nathan Reynard, herein asks the Court to deny the petition of Charles Kelly, and to allow cross-petitioner to have custody of his own children, that the adoption prayed for be denied and for all other proper and just relief in the premises.

/s/ NATHAN REYNARD
Nathan Reynard

Subscribed and sworn to before me this 5th day of September, 1967.

/s/ PATRICK N. RYAN
Patrick N. Ryan

(SEAL)
My commission expires:
March 9, 1971."

The finding of the court on which the judgment is allegedly based, in pertinent part reads as follows:

"Cause having been taken under advisement and briefs having been filed and considered, *court now finds that natural Father has deserted and abandoned Stuart Glen Reynard, born October 22, 1956, and Toby Kay Reynard, born June 22, 1959* (Emphasis supplied). Natural Mother files consent to adoption. Finding further that Stuart Glen Reynard and Toby Kay Reynard, respectively, should be and are hereby adopted as legal heirs at law of and by Charles Ray Kelly, under the changed names of Stuart Glen Kelly and Toby Kay Kelly, respectively. Costs against petitioner. *Judgment on findings.*" (Emphasis supplied).

The decree of adoption, in pertinent part reads as follows, to-wit:

"Comes now the petitioner, Charles Ray Kelly, in person and by his attorneys, Kiley, Osborn, Kiley & Harker, who heretofore filed his petition for the adoption of the Infants Reynard, which petition reads as follows: (H.I.); and comes now the respondent, Nathan H. Reynard, in person and by his attorneys, Ryan & Welchons, who heretofore filed his verified answer and cross-petition, which answer reads as follows: (H.I.).

This cause being at issue on petitioner's petition and respondent's answer, and the Court, having heard evidence thereon and being duly advised in the premises, now finds that Sydney Kay Kelly, the mother and natural parent of the Infants Reynard, consented in writing to the adoption by petitioner as prayed for by joining in said petition with him.

"The Court finds that the respondent's failure to show parental care and concern for the health, education, religion and love and affection of the Infants Reynard; to display interest in or inquire about their welfare; to communicate

and to visit with them; and to provide monetary support for them, constitutes abandonment and desertion of said children by the respondent; that such condition existed for more than six months prior to the date the petition was filed; and that the respondent failed to pay any support money for said children for a period of at least one year prior to the date the petition was filed; and the Court, therefore, further finds that the consent of the respondent, the natural father, may be dispensed with in this adoption.

And the Court also finds that the petitioner herein is of sufficient ability to rear said children and furnish suitable support and education for said children; and that it is to the best interests of said children that the petition for adoption be granted as prayed.

IT IS, THEREFORE, ORDERED ADJUDGED AND DECREED by the Court that the said infant Stuart Glen Reynard, a white male child, born on the 22nd day of October, 1956, at San Antonio, Texas, and Toby Kay Reynard, a white female child, born on the 22nd day of June, 1959, at Myrtle Beach Air Force Base, South Caroline (sic), should be and they are hereby adopted as the children and heirs at law of the petitioner, Charles Ray Kelly, and from and after this date Stuart Glen Reynard takes and shall be known by the name of Stuart Glen Kelly and that from and after this date Toby Kay Reynard takes and shall be known by the name of Toby Kay Kelly and that they have and receive, by descent or otherwise, all rights and interests in the estate of Charles Ray Kelly to which they would be entitled if his natural heirs.

IT IS FURTHER ORDERED by the Court that the petitioner pay the costs of this proceeding.

Dated this 22nd day of March, 1968.

/s/ MANUEL P. GUERRERO
Manual P. Guerrero
Judge of the Grant
Circuit Court

Appellant's Motion for New Trial, omitting title, formal parts and signature, in pertinent part reads as follows:

"Respondent Nathan Reynard moves the Court for a new trial on each of the following grounds:

1. The decision of the Court is not sustained by sufficient evidence.

2. The decision of the Court is contrary to law.

## MEMORANDUM

"Captain (now Major) Reynard, the natural father of these legitimate children, did not consent to their adoption and did not abandon or desert them. The evidence clearly showed this. Without the father's consent, or clear, cogent, probative evidence of abandonment or desertion, the adoption could not meet the requirements of the statute. Burns' section 3-120. Adoption in Indiana is strictly statutory. If a proposed adoption does not meet the statutory requirements, support the Court's finding of abandonment and desertion; hence the decision of the Court is not sustained by sufficient evidence and is contrary to law.

The evidence clearly shows that Major Reynard was a jet pilot in the United States Air Force, serving his country in Vietnam during the entire time the abandonment and desertion allegedly occurred. The evidence even showed that petitioner Kelly prevented the Major's communications from reaching the children, and that Mrs. Kelly (the children's mother) threatened to have the Major jailed if he tried to visit them. Mrs. Kelly had physical and legal custody of the children and effectively prevented him from visiting them during his infrequent leaves. The evidence showed that Major Reynard stood ready and willing to pay support if his rights of visitation were honoured; at one point he tendered $1,500.00 for the children's support, but Mrs. Kelly refused it. He also paid support through the Clerk's office in 1966.

After reviewing the evidence and the law, the Court should grant Major Reynard a new trial herein."

The above motion for new trial was filed in the Grant Circuit Court on January 23, 1968. The same was overruled by said court on March 22, 1968. The record with respect thereto reading in pertinent part as follows:

"AND BE IT FURTHER REMEMBERED, that afterwards, to-wit, on the 22nd day of March, 1968, of the January, 1968 Term, the following proceedings were had in said cause, being in the words and figures following, to-wit:

Comes now parties hereto by counsel. Court now enters written decree of adoption, all as per written decree now entered as follows: (HI), nun (sic) pro tunc as of December 26, 1967.

Said Decree being in the words and figures following, to-wit:...."

The record before us discloses that appellant and his former wife were married December 10, 1955, while both were students at Ohio University. Upon graduation appellant was commissioned in the United States Air Force and assigned to McAllen, Texas, where he was stationed for six months. Thereafter he was stationed at Laredo, Texas, during which time his son Stuart Glen Reynard was born at the hospital at Kelly Air Force Base, San Antonio, Texas. His daughter, Toby Kay Reynard, was born while appellant was stationed at Myrtle Beach Air Force Base, South Carolina. Thereafter appellant was assigned to Bitburg, Germany. Mrs. Reynard and the children accompanied him to Germany.

It appears that Mrs. Reynard preferred to have no more children. By mutual agreement appellant consented to and did undergo a vasectomy during the year 1963, and prior to November 18, 1963, the result of which denies him further heirs of his body. Sometime during November, 1963, the parties separated and on November 18, 1963, Mrs. Reynard and the children returned to the home of her parents in Marion, Indiana.

Appellant next saw his wife in Marion, Indiana, on December 23, 1963, at the Spencer Hotel. As soon as he arrived in Marion on December 23, 1963, he called his father-in-law, Mr. Overman, and asked to see his children. Mr. Overman came down to see him and after riding around all day, Mr. Overman said he would discuss the matter with his daughter and would call him later and let appellant know what the decision was. That evening Mrs. Reynard came to the hotel and she and appellant had a long discussion, during which appellant was invited to come to her parents' home about ten o'clock Christmas morning to see his children, *that is if he would come out without upsetting the children, and could spend one or two hours.* His wife and her parents did

not want him to show any emotion on seeing the children for the first time in a month and a half. Appellant felt that he could not avoid showing emotion with the children and in deference to the wishes of his wife and her parents he did not see the children on that occasion.

The next time appellant saw his wife was in January, 1964, Appellant was in a psychiatric ward in the hospital at Dayton, Ohio. His confinement therein resulted from a nervous breakdown due to fatigue and emotional upset over his marital situation. Appellant next saw Mrs. Reynard and his children in Feburary, 1964, at her parents' home in Marion, from six until nine in the evening. At that time, on his wife's complaint, he was there picked up and placed in jail over night and released the next morning. He saw the children again early in March, 1964, shortly before he was returned to active duty and assignment to Eglin Field, Florida. Repeatedly during the year 1964, he sought to see the children and to have them for a visit but was denied both.

The record discloses that appellant and his former wife, Sydney Reynard Kelly, were divorced September 22, 1964. Appellant was not personally present at the trial, but was represented by counsel, first by Mr. Kiley, in an original waiver under the Soldiers and Sailors Civil Relief Act, who when the proceedings were contested withdrew his appearance. Mr. Tobin represented appellant in the divorce proceedings in property settlement rights and support.

The evidence in the record discloses that appellant's payments for support for his wife and children started out at $375.00 a month, then went down to $285.00, then to $200.00, then to $175.00 in the final decree. Support was paid in full every month to April of 1965, when it got delinquent. The arrearage of support started to accumulate in May, 1965, a little over a year after appellant last saw his children. The record also discloses appellant has made support payments totaling $425.00 to the office of the clerk of the trial court

and has sent the further sum of $1,500.00 to one of his attorneys to use in an attempted settlement of the arrearage in support. However, the money in the clerk's office has not been drawn by Mrs. Reynard Kelly and she and her attorneys refused to accept the $1,500.00, and that money was returned to appellant. It further appears that during the period from March, 1964, to October 25, 1967, appellant had sent birthday and Christmas gifts to his children, a good many of which had been withheld from said children, who were unaware of the fact that the gifts had been sent. It also appears that appellant has had a total of seven attorneys representing him in attempts to obtain visitation rights with his children and that such attempts were all unavailing. It also appears beyond the shadow of a doubt that the former wife of appellant, who had custody of the children by the terms of the divorce decree, refused to permit her former husband, the father of the children, to see them unless he consented to the adoption here appealed from. Further, she refused to discuss the payment of support money saying "[a]t this time we are not interested in any money whatsoever, we had filed for adoption." The record also discloses that appellant was advised by his counsel in 1965, that counsel was told by Mrs. Kelly's attorney that appellant would be attached and put in jail if he appeared in Grant County and attempted to see his children or to take legal steps to obtain the right to visit them. The record also discloses that appellant, except for the year 1966, which he spent in Viet Nam, has been a resident of Fort Walton Beach, Florida, for the past three and one half years.

Even the majority opinion in citing authority in support of the interpretation of the statute (§ 3-120 Burns', *supra*) adopts a portion of the language cited in *Emmons v. Dinelli* (1956), 235 Ind. 249, 259, 133 N. E. 2d 56 as follows:

> "*Admittedly, there can be no adoption in the absence of consent, unless the ultimate facts of abandonment or desertion is found to exist.* (Emphasis supplied) The issue

with which we are concerned involves the criterion or evidentiary facts necessary to support the ultimate fact of such abandonment or desertion. In determining the elements or criterion of the words 'abandoned or deserted,' as used in our adoption statute, we look first to the language and purpose of the statute. (Here the Court cited the statute.)

. . . . .

Significantly our adoption statute omits the use of the word 'wilful,' as characterizing the abandonment or desertion. In contrast, the Ohio statute uses the term 'wilfully abandon' and, in construing that statute, the probate court of that state stated with reason that '. . . The word "wilfully" as used in the statute has a definite meaning which requires that neglect of the parents must be intentional. Without the word being used the neglect of duty could be caused by carelessness and neglect and, therefore, be unintentional . . . .' *In re Adoption of Gates* (1948), 84 Ohio App. 269, 270, 85 N. E. 2d 597, 598. *Therefore, looking to the language of our statute, we conclude that the careless and negligent failure to perform the duties of parenthood is a significant element of the offense of abandonment or desertion, which neglect is to be considered regardless of any actual 'intention' or 'settled purpose' by the parent to relinquish the proprietary claim of the parent to his child.*" (Emphasis supplied)

I ask where and how, in view of the fact that appellant admittedly had employed a total of seven lawyers to assist him in obtaining visitation rights with his children, can it be alleged, let alone concluded, that appellant was guilty of "careless and negligent failure to perform the duties of parenthood . . . ," and "a significant element of the offense of abandonment or desertion, which neglect is to be considered regardless of any actual 'intention' or 'settled purpose' by the parent to relinquish the proprietary claim of the parent to his child." The reasoning of the majority opinion on this score is all the more untenable in view of the uncontradicted evidence in the record that the Grant Superior Court, the court in which the divorce proceedings were held, refused to permit appellant's counsel to file, or proceed to hearing on a petition to require the former wife (Sydney Kelly) to permit appellant to visit his children.

The majority opinion is in error, on two counts, when it states "[t]herefore, in the case at bar the question is presented as to whether or not the payment of some $75.00 during the year immediately prior to the filing of the petition for adoption is sufficient to comply with the terms thus requiring consent of the natural father." I again point out that the petition for adoption filed in this cause and relied upon by the appellees was, and is, predicated on the theory of *abandonment* or *desertion* for six months or more immediately preceding the date of the filing of the petition and not on the theory that the father of the child or children failed to pay any support money for a period of one (1) year immediately prior to the filing of the adoption proceedings. Of course the consent of the father is required in the case at bar.

Second, while I deem it outside the issues in this case by virtue of the allegations of the petition, the majority opinion seeks to fire a double barreled blast at appellant by alleging abandonment for six months and proving abandonment by an attempted showing of failure to pay support for a year immediately preceding the filing of the petition. That position and posture is untenable for several reasons. First, the former wife made several statements to the effect they didn't want support for the children, they (she and her present husband, I assume) wanted appellant to consent to the adoption. Second, she (the former wife), through counsel, refused to accept the $1,500.00 payment tendered by appellant's counsel to apply to an alleged arrearage in support payments, as well as certain sums paid into the clerk of the Grant Circuit Court. Third, our case law does not support or sustain appellee or the majority opinion on this score as will be seen by reference thereto later on herein. Fourth, during the entire period, before, during and after the filing of the petition for adoption, appellant was exerting every possible effort, through counsel, to obtain visitation rights with his children. At the same time, according to undisputed testimony in the record, the Grant

Superior Court was refusing to let counsel file petitions for appellant and the appellees and their counsel were threatening appellant with arrest if he even appeared in Grant County. There is no denial that the former wife had him arrested and thrown in jail the last time appellant saw his children at her home. Nor is there any reason to doubt that she would have had him arrested on sight since the record shows, without contradiction, that she had an attachment for him issued in December, 1966, before he returned from Viet Nam, and another issued on January, 1967. Finally, the statute does not permit the strange construction placed upon it by the majority opinion. The statute permits adoption without written consent of the parents in either of two ways: A. On proof that the child has been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition, and it is so adjudged; B. In all cases where the father of any child or children has failed to pay *any* support money for a period of one (1) year immediately prior to the filing of adoption proceedings, etc. In the case at bar appellant made some payments to the clerk and through counsel tendered a substantial payment to the former wife and her counsel which tender was refused. Therefore, appellant is not within the area of discretion of the court whereby it could dispense with the filing of the father's written consent. Furthermore, the petition for adoption did not allege failure to provide support for more than one (1) year, it alleged abandonment. That must be proved or it fails. That proof was not made and the petition must fail.

I do not approve of appellant's action in withholding support payments, but under the circumstances shown here by the record, I must say that it represents an understandable human reaction and an unsuccessful attempt to at least improve his bargaining position with respect to seeing his children. I also point out that the petitioner failed to introduce into evidence the decree of divorce or a certified copy thereof. It seems to me the evidence as to the amount of the payments

is hearsay. As I read the record there is no evidence whatever as to the due dates of payment, nor is there any showing that the former wife had the exclusive and continuing custody of these children. Furthermore, the petition for adoption is predicated on abandonment for six months, not failure to support for a year, consequently the question of support is outside the issues of this case.

The record herein discloses that appellant spent the year 1966 on assigned duty in Viet Nam. Exhibit one filed in said cause were orders sending him to Viet Nam departing January 27, 1966. Exhibit two is a set of orders for change of station back to the United States, he arrived back in the United States on January 16, 1967. The petition for adoption was filed in the Grant Circuit Court on January 24, 1967, and was immediately referred to the County Department of Public Welfare for investigation. So far as the record discloses there was no attempt made to obtain service on appellant until June 15, 1967, when an affidavit of his non-residence was filed.

The record discloses charges by appellant that the court refused to permit the filing of petitions, on his behalf, to obtain visitation rights for him with his children. These charges are not denied, explained or attempted to be evaded either by appellee or anyone else. No denial is made of the record that appellant was permitted to see his children only three times during the period from September 18, 1963, to the date of trial herein in December, 1967, and on the occasion of the second visit his former wife had him thrown in jail for such visit. Nor is there any denial that the wife, during all the time thereafter, threatened to send or have appellant sent to jail if he came to Grant County to see the children. There is no denial that she caused an attachment to issue out of said county against appellant in December, 1966, before he had completed his tour in Viet Nam, and had one issued against him again in January, 1967, before the Petition for Adoption was filed.

The record further discloses the employment by appellant of several lawyers, seven all told, in attempts to get to visit his children. In spite of all this record, appellee and his counsel in their brief in support of the Petition for Adoption argue "REYNARD'S FAILURE TO SUPPORT HIS CHILDREN, AND HIS LACK OF VISITATION WITH THEM AND CONCERN FOR THEIR WELFARE CONSTITUTES ABANDONMENT OF THEM." In oral argument counsel for appellee complained that appellant only visited the children three times. The third visit appellant had with his children since the separation in 1963 was on the day the adoption case was tried in December, 1967, and that visit was made possible by the indulgence and order of the trial court, over the objections of appellant's former wife and her counsel. The speciousness of the argument on visitation made by appellees' counsel is equalled only by that of the son who murdered his parents and then sought clemency on the ground that he was an orphan.

Appellant's Answer Brief contains an exhaustive review of the law applicable to the case at bar and for that reason is, in pertinent part, adopted and made a part of and included in this dissent, as follows:

> "The common law made no provision for adoption. *Humphries v. Davis*, 100 Ind. 274, 276; *In re Perry* 83 Ind. App. 456, 464-5, 148 N. E. 163. Derived from Roman law, adoption is entirely statutory in Indiana. *Johnson v. Smith*, 203 Ind. 214, 176 N. E. 705; *Freeland v. Weed*, 75 Ind. App. 273, 128 N. E. 656.

> Since adoption statutes are in derogation of the common law, they must be strictly construed. *In re Force's Adoption*, 126 Ind. App. 156, 131 N. E. 2d 157, 158; *In re Chaney's Adoption*, 128 Ind. App. 603, 150 N. E. 2d 754, 758-9; *In re Bryant's Adoption*, 134 Ind. App. 480, 486-7, 189 N. E. 2d 593.

In *Force*, the Court said:

> 'While adoption is a practice of antiquity with its main roots being nurtured under the Roman law, in England

there is no provision for adoption at common law or under statute. In the United States adoption exists solely by statute and it is uniformly held in this country that statutes authorizing adoption are in derogation of the common law which made no provision for the adoption of children, and since in such proceedings natural parents are deprived of all their rights as such forever, such statutes must receive a strict construction.'

*Chaney* stated the rule as follows:

'Adoption proceedings in Indiana are purely statutory. *Johnson v. Smith,* 1932, 203 Ind. 214, 176 N. E. 705. Accordingly our statutes governing adoption are in derogation of the common law and must be strictly construed as to all procedural requirements and strictly followed in all essential particulars.'

In *Bryant,* the Court added:

'However, since the relationship between parent and child is a bundle of human rights of such fundamental importance, it has generally been held that adoption statutes being in derogation of the common law should be strictly construed in favor of a worthy parent and the preservation of such relationship.'

The pertinent part of the statute provides:

'If such child have parent or parents living, he, she or they shall consent in writing to such adoption, . . . Such consent of parent or parents may be dispensed with if such child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition.' Burns' Indiana Statutes, section 3-120.

Captain Reynard has not consented to this proposed adoption. On the contrary, he has actively opposed it. Petitioner, however, contends that Captain Reynard abandoned or deserted his children within the meaning of the above statute.

The petition for adoption was filed 24 January 1967. Hence the six-month period immediately preceding its filing began 24 July 1966. During this entire period Captain Rey-

nard was overseas, fighting for the United States Air Force in Viet Nam. Certainly, in fighting for his country, he did not abandon or desert his children. Rather he defended them, and all other children in America. Men would never enter military service if they ipso facto abandoned and deserted their children.

The Court must look to the statutory period. Burns' section 3-120; *In re Bryant's Adoption*, 134 Ind. App. 480, 489, 189 N. E. 2d 593. Certainly there was no evidence of abandonment or desertion in 1966.

Petitioner admits this. On page 5 of his brief he says:

'Truly, absence from the continental United States as a result of combat in the United States Air Force through all of 1966 is an occupational hazard which might explain his failure to see the children for that year; . . . .'

When the natural father entered these adoption proceedings, they became adversary. *Attkisson v. Usrey*, 224 Ind. 155, 65 N. E. 2d 489, 491; *In re Chaney's Adoption*, 128 Ind. App. 603, 150 N. E. 2d 754, 756. A very heavy burden of proof fell upon petitioner. Discussing this burden, the Appellate Court said in *Bryant*:

'Thus the parties should not approach the Court in equal status. Courts have not hesitated to build a "strong fortress" around the rights of natural parents to their children; for this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established "by clear and indubitable evidence." *In re Bryant's Adoption*, 134 Ind. App. 480, 492-3, 189 N. E. 2d 593.

Petitioner faced a far heavier burden of proof here than in custody proceedings. In *Bryant*, the Court noted:

'Adversary proceedings for the adoption of a child must be carefully distinguished from those involving a question of its custody as the former involve more serious consequences and are of real import. Custody may be awarded for a temporary duration but a decree of adoption severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another. For all legal and practical purposes a child is the same as dead to its parents. The parent has lost the right to ever see said child again or to have any real knowledge of its whereabouts.' 134 Ind. App. 480, 487-8.

In Force's Adoption, the Court defined 'abandonment' under Burns' section 3-120:

'There seems to be a practical unanimity in the case as to the definition of the word "abandonment" when used in an adoption statute, and that is, that abandonment exists when there is such conduct on the part of a parent which evidences a settled purpose to forego all parental claims to the child for the time prescribed by statute. *Emmons v. Dinelli, supra;* C.J.S., Adoption of Children, section 21, page 388. The foregoing definition is supported by a long list of authorities cited in an exhaustive case note in 35 A. L. R. 2d 662-702, at page 665. The overwhelming weight of authority in the adjudicated cases supports a definition which contains language expressive of a general idea that it is a complete and absolute relinquishment which constitutes abandonment.' 126 Ind. App. 156, 131 N. E. 2d 157, 158-9.

The Court added:

'In addition to the decided cases which establish an unconfuted rule that to constitute abandonment conduct on the part of the parent must be shown which evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child, Webster defines the word "abandon" as meaning to "relinquish or give up with the intent of never again resuming or claiming one's rights in; to give up absolutely; to desert . . . ." Webster's New International Dictionary, 2d Ed., page 2.' 126 Ind. App. 156, 131 N. E. 2d 159.

*In re Bryant's Adoption, supra,* was somewhat similar to the present case. There the natural father also fought allegations of abandonment and desertion. During the statutory six-month period, the child lived with its mother. Father and mother had been divorced some time earlier. Noting the 'decree of nature' that a divorced wife take custody of small children, the Court said:

'In order to sustain the trial court's finding of abandonment and desertion on the facts in this case we would perforce be required to hold as a matter of law that the mere acquiescence of the father in the mother's custody of their infant child would constitute a relinquishment of his parental rights and claims to their child prior to the death of its mother. This we cannot do. Therefore we hold that such acquiescence was merely following the "decree

of nature" and was not an evincement of a "settled purpose" or "intention" to forego parental duties and obligations, and neither does it constitute a careless and negligent failure to perform parental duties and responsibilities, and it therefore cannot be construed to be an implied relinquishment of his claim to his child.' 134 Ind. App. 480, 490, 189 N. E. 2d 593.

This reasoning applies exactly to the present case. Here the children also lived with their mother during the statutory period; they were "not bereft of home and parental care." 134 Ind. App. 480, 489, 189 N. E. 2d 593. Captain Reynard properly acquiesced in the mother's legal custody of the children.

The Appellate Court also held that a mere lack of support payments could not destroy a father's rights. The Court said:

'It appears self-evident that this was not the legislative intent and we do not here supply such an intendment. To hold otherwise would put the parental rights of every father that has been deprived of custody of his children at the mercy of the children's custodian to extinguish such rights almost at will, by simply refusing his support.; 134 Ind. App. 480, 492, 189 N. E. 2d 593.

At one point Captain Reynard tendered $1,500 for the children's support, but Mrs. Kelly refused it. Thus the support situation here paralles *Bryant*. Clearly there was no evidence of abandonment or desertion here.

The evidence showed that petitioner, the children's stepfather, did not allow them to receive gifts and cards from Captain Reynard. Although Captain Reynard was a serviceman fighting for his country, Mrs. Kelly threatened to have him jailed if he tried to visit the children on his furlough. Such jailing would have ruined his career in the Air Force, and he did not dare risk it. Meanwhile petitioner, in his comfortable home, trained these little children to call him 'Daddy'. Seldom has a stepfather so overreached himself and exceeded his rights. Aided by distance, time, and war, Mr. and Mrs. Kelly schemed to remove Captain Reynard from the hearts and minds of his children. Now, instead of offering apologies, they accuse him of abandonment and desertion.

As noted above, the facts in this case parallel In re Bryant's Adoption. Yet one fact makes Captain Reynard's position even stronger: his combat service abroad during the

critical period. The Appellate Court found no abandonment or desertion in Bryant; certainly there was no abandonment or desertion here.

Petitioner, in his brief, relies largely upon foreign cases. Such reference is unnecessary; the Indiana statute and cases furnish ample guidance. Since the law of adoption is purely statutory, and the adoption statutes are not uniform, foreign decisions have little relevance here. On page 6 of his brief, petitioner quotes extensively from *Miller's Petition*, 15 Ill. App. 2d 333, but our Appellate Court decries 'The so-called "Illinois Rule" which seems to lead the trend towards state paternalism.' *In re Bryant's Adoption*, 134 Ind. App. 480, 487, 189 N. E. 2d 593. On page 5, petitioner relies on a nisi pruis decision: *Nuttal's Adoption*, 24 Misc. 2d 588, 28 N. Y. S. 2d 271.

Petitioner does cite *Emmons v. Dinelli*, 235 Ind. 249, 133 N. E. 2d 56, but it presents a wholly different situation. There the father had died, and the mother had simply abandoned the child to strangers.

Of course, the best interests of the Reynard children require the maintenance of their relationship with their father. However, we do not reach the 'child's best interest' rule in this case, since it never becomes an issue in an adversary adoption proceeding unless abandonment or desertion is 'first established by clear, cogent and indubitable evidence.' *In re Bryant's Adoption*, 134 Ind. App. 480, 493-4, 189 N. E. 2d 593; *In re Force's Adoption*, 126 Ind. App. 156, 131 N. E. 2d 157, 160. Petitioner has not proven abandonment or desertion here.

On page 12 of petitioner's brief, he refers to the report from the County Department of Public Welfare. Of course, in an adversary proceeding, this report is inadmissible. *Attkisson v. Usrey*, 224 Ind. 155, 65 N. E. 2d 489, 491; *In re Chaney's Adoption*, 128 Ind. App. 603, 150 N. E. 2d 754, 757.

One early case suggests that we may apply principles of Roman law, whence our adoption law ultimately derives. *Markover v. Krauss*, 132 Ind. 294, 298-9, 300-1, 31 N. E. 1047. But our adoption law in Indiana follows the 'adrogatio' of the ancient Republic rather than the 'adoptio' of the later juris-consults. Of course, either adoption always required the father's consent."

Without weighing the evidence herein, but merely reviewing it for the purpose of determining whether or not the judgment

of the trial court is sustained by sufficient evidence of probative value, *Dent v. Dent* (1961), 241 Ind. 606, 174 N. E. 2d 336; *Kraus v. Kraus, Executor* (1956), 235 Ind. 325, 132 N. E. 2d 608; I must and do come to the conclusion that the evidence does not sustain the judgment appealed from and is therefore contrary to law.

Again I must point out that the theory of petitioners' complaint or petition was based on *abandonment for six months, not on failure to support for one year immediately prior to the date of the filing of the petition for adoption.* See paragraph six of the petition page two of this dissent. The finding of the court (page four of this dissent) clearly indicates the cause was tried on the theory of abandonment and no other. The judgment was to be ". . . on findings." To be valid it had to be. There is in the finding not one scintilla of evidence or one word finding that appellant *"failed to pay any support money for said children for a period of at least one year prior to the date the petition was filed,"* as is asserted in the judgment rendered March 22, 1968 (emphasis supplied). It is, therefore, clearly apparent the trial and findings were on one theory, abandonment and desertion, that being the issue before the court for determination, and that this court now affirms on a different theory, failure to pay support, which was not in issue on the trial. The finding is further deficient in that it fails to state that the abandonment was for six months immediately preceding the date of the filing of the petition for adoption.

I am further of the opinion the issues presented the trial court by the petition and answer limited the court to the consideration of the question of abandonment. The attempted injection of the question of failure to support for a year, thrown in the judgment by appellees' counsel in preparing the judgment, is a nullity in the absence of a trial on a petition for adoption alleging such ground.

The entire proceedings in this case constitute such a flagrant abuse of discretion, denial of basic human and constitu-

tional rights of the appellant as to require the reversal of this judgment on the grounds of public policy as well as for the legal defects pointed out in this dissent.

The judgment herein should be reversed and the cause remanded to the trial court with instructions to grant appellant's Motion for a New Trial.

NOTE.—Reported in 251 N. E. 2d 413.